STATE, Plaintiff in error, v. RUSSO, Defendant in error.

*No. State 190 (1974). Argued September 9, 1975.—Decided October 2, 1975.*

(Also reported in 233 N. W. 2d 485.)

170

For the plaintiff in error the cause was argued by *David J. Becker,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the defendant in error there was a brief by *Kenneth R. Baumgartner* and *Baumgartner & Anderson,* all of Kenosha, and oral argument by *Kenneth R. Baumgartner.*

DAY, J. Two principal issues are raised in this court. The first is, was the dismissal of an information, because

the trial court decided it lacked jurisdiction following a full trial to the court, made "with prejudice," thus preventing subsequent prosecution for the same offense? Secondly, if the dismissal is found not to be with prejudice in the first instance, is a subsequent prosecution barred by the double jeopardy clause of the fifth amendment to the United States Constitution? Other claims of defense to further prosecution are discussed in the opinion. We conclude that the original action was not dismissed with prejudice. We also conclude that since the original action was dismissed for lack of jurisdiction because of an allegedly defective information, a subsequent prosecution is not barred by the double jeopardy clause.

On November 8, 1971, a criminal complaint against the defendant was filed in the county court of Kenosha county alleging that the defendant between March 12, 1971, and on or about April 5, 1971, at the city of Kenosha did obtain title to property of another by false representation, contrary to sec. 943.20 (1) (d),[1] and (3) (c),[2] Stats. On June 13, 1972, an information was filed charging that ". . . between March 12, 1971, and on or about April 5, 1971, in the City of Kenosha . . . the defendant did obtain title to property of another, to wit, $27,650.00 U. S. currency, belonging to Josephine Jensen, by feloniously and intentionally deceiving her with false representations which he then knew to be false, made with intent to defraud said Josephine Jensen to whom said false representations were made; contrary to Section 943.20 (1) (d), and (3) (c), Wisconsin Statutes

---

[1] 943.20 (1) (d) "Obtains title to property of another by intentionally deceiving him with a false representation which is known to be false, made with intent to defraud, and which does defraud the person to whom it is made. 'False representation' includes a promise made with intent not to perform it if it is a part of a false and fraudulent scheme."

[2] 943.20 (3) (c) "If the value of the property exceeds $2,500, a fine of not more than $10,000 or imprisonment for not more than 15 years or both."

. . . ." In September of 1972, a trial was had before the Honorable ERNST J. WATTS, in the circuit court for Walworth county. Trial was to the court, a jury having been waived. At the conclusion of the evidence and final arguments of counsel, the defendant moved to dismiss the information on the grounds that the information did not state one of the statutory elements of the crime. The trial court found that ". . . The element that is omitted from the Information is the element that the person was defrauded, by the person [by] whom the representation was made. . . ." The state moved to amend the information pursuant to secs. 971.26[3] and 971.29 (2),[4] Stats. The trial court found that it would be prejudicial to the defendant to permit an amendment to the information. The court said:

". . . The question, however, is that if this court has never had any authority in this matter because there is no crime that the law recognizes with these five elements, is it prejudicial or fair to this defendant to at this time for the first time allow the state to amend to include a sixth element and then proceed on the case as though the court had had authority or jurisdiction to proceed in the matter from the time that the information was filed, which was June 13, 1972. In the opinion of the court to allow the state to amend at this time would be prejudicial to the defendant . . . ."

The court also made it clear that because, in its opinion, the information did not contain the elements of the

---

[3] "971.26 **Formal defects.** No indictment, information, complaint or warrant shall be invalid, nor shall the trial, judgment or other proceedings be affected by reason of any defect or imperfection in matters of form which do not prejudice the defendant."

[4] 971.29 (2) "At the trial, the court may allow amendment of the complaint, indictment or information to conform to the proof where such amendment is not prejudicial to the defendant. After verdict the pleading shall be deemed amended to conform to the proof if no objection to the relevance of the evidence was timely raised upon the trial."

crime charged, the court lacked jurisdiction and granted
". . . the defendant's motion to dismiss the Information
for lack of subject matter jurisdiction . . . The defendant
is discharged and the bond will be refunded. . . ." The
state did not appeal from the dismissal of the informa-
tion by Judge WATTS.

On the same day, September 27, 1972, a new complaint
properly stating the elements of the crime was issued,
and the defendant was rearrested and admitted to bail.
On October 11, 1973, the defendant filed a motion in the
county court of Kenosha county to dismiss the complaint
because ". . . said charge was absolutely dismissed by
. . . Judge ERNST JOHN WATTS on September 27, 1973,
and . . . violates the defendant's constitutional guaran-
tees under the due process and double jeopardy clauses of
the United States and Wisconsin constitutions. . . ."

The motion came on for hearing before the Honorable
ARTHUR L. LUEBKE, circuit judge for the twelfth judicial
circuit, as acting circuit judge of Branch II of the first
judicial circuit on July 5, 1974, at which time the court
concluded that Judge WATTS ". . . intended to dismiss
the case with prejudice . . ." and granted the motion
for dismissal. A formal order to that effect was signed
and filed on July 17, 1974. The state asked for and was
granted a writ of error to review this order.

We have searched the record and find nothing that in-
dicates that Judge WATTS dismissed the initial informa-
tion "with prejudice." On the contrary, it appears quite
clearly that he dismissed the information because he con-
cluded he had no jurisdiction from the very beginning of
the trial because the information stated no crime known
to the law. The only "prejudice" that he referred to was
the one that he said would derive from allowing an
amendment at the end of a trial to an information that
gave the court no jurisdiction to begin with. We con-
clude, therefore, that the dismissal was not made with

prejudice and, therefore, any question as to the effect on a future prosecution, had it been dismissed with such prejudice, is not before us.

The remaining question is whether or not the double jeopardy clause of the fifth amendment bars issuance of another complaint growing out of the same fact situation, where the earlier action has been dismissed because of lack of jurisdiction.

In the case of *State v. Schneider* (1973), 60 Wis. 2d 563, 211 N. W. 2d 630, this court held that where an information was fatally defective for having failed to allege scienter in an obscenity case, the defect goes to the jurisdiction of the court, and that since the information stated no crime known to the law, the proceedings were void *ab initio*. The court further went on to hold, however, that a retrial of the defendant was permissible. The court said at pages 567, 568:

"Since the defect is one of the jurisdiction of the court over the alleged offense, the proceedings are void *ab initio*. The judgment of conviction and the sentence appealed from are vacated as being beyond the jurisdiction of the court, and the motion of the attorney general to confess error for these jurisdictional reasons is granted.

"The record indicates that the statute of limitations on the alleged crime has not yet run, and in the discretion of the prosecutor a new prosecution may be initiated. The defendant is discharged from the present custody of the trial court, since no jurisdiction was acquired by charging an offense not known to the law."

In the case of *State v. Green* (1973), 60 Wis. 2d 570, 211 N. W. 2d 634, the court again held that failure to allege scienter in an information involving an obscenity case made the proceedings void *ab initio,* and the court said at page 572:

"The motion of the attorney general to confess error is granted. The proceedings in the action are set aside as being wholly void, and the judgment, sentence, and order

are vacated. Since no jurisdiction was acquired over the defendant, future prosecution, not barred by the statute of limitations, may be initiated in the discretion of the prosecutor."

Neither of these cases discussed the issue of double jeopardy. In both cases the defendants had been found guilty following a jury trial. In the case before us there was no finding of either guilt or innocence because of the trial court's holding that the information was deficient and that the court had no jurisdiction over the matter and therefore had no alternative but to dismiss the action.

The defendant argues that the case of *United States v. Jenkins* (1975), 420 U. S. 358, 95 Sup. Ct. 1006, 43 L. Ed. 2d 250, is dispositive of the issue of double jeopardy before us. The *Jenkins Case* held that no appeal could be taken from a trial court ruling dismissing an indictment against the defendant for the reason that double jeopardy would result from any ruling favorable to the United States, since the case would then have to be sent back for "further proceedings of some sort, devoted to the resolution of factual issues" (p. 370). In *Jenkins,* at the end of a bench trial, the trial court "dismissed" the indictment and "discharged the [defendant]." The supreme court found that it was not possible to determine from the record whether the trial court decided against the government on issues of law, or in favor of the defendant on the facts. The court then cites a line of authority holding that where a defendant is acquitted either by a jury or by a court after a bench trial, there can be no retrial of the case even though the indictment was fatally defective. The rule is different where a defendant is convicted on a defective indictment and such conviction is overturned on appeal. Such cases can then be retried without violating the double jeopardy clause of the fifth amendment. The original authority for both

propositions is *United States v. Ball* (1896), 163 U. S. 662, 16 Sup. Ct. 1192, 41 L. Ed. 300. Under the circumstances of *Jenkins*, where the supreme court could not determine whether the defendant had, in fact, been acquitted, the issue was resolved in the defendant's favor, and further prosecution was barred. In the present case, no claim is made that the prosecution was dismissed as a result of any ruling relating to the merits of the case; it is clear that the dismissal was related solely to the presumed lack of jurisdiction. *Jenkins* is, therefore, distinguishable on its facts.

Contrasting with *Jenkins* is the case of *United States v. Wilson* (1975), 420 U. S. 332, 95 Sup. Ct. 1013, 43 L. Ed. 2d 232, decided the same day. In *Wilson*, a jury verdict of guilty was set aside by the trial court because an unreasonably long preindictment delay, during which a key exculpatory witness had become unavailable for testimony, deprived defendant of his right to a fair trial. As in *Jenkins*, the defendant claimed that no appeal by the government was possible because the trial court's ruling was based on factual findings, and was therefore similar to an acquittal, which would bar appeal or retrial under double jeopardy principles. As distinguished from *Jenkins*, however, no further factual proceedings in the trial court would be required in *Wilson* if the appeal of the trial court's order setting aside the jury verdict was successful, because a reversal on appeal would simply reinstate the jury verdict. Where no further trial court proceedings are required, the supreme court held, double jeopardy principles do not bar appeal.

The rule is also well established that where a trial is terminated prior to a determination of guilt or innocence (either by a jury or by a court in a bench trial), the double jeopardy clause does not prevent a retrial if there was a "manifest necessity" to terminate the proceedings because the indictment or information was fatally defective and the trial court, in effect, had no jurisdiction

to try the case. *Illinois v. Somerville* (1973), 410 U. S. 458, 93 Sup. Ct. 1066, 35 L. Ed. 2d 425. While *Somerville* held that jeopardy attached at the time of such trial, the jeopardy is a continuing one that continues through the retrial. In the case before us, since the issue of whether or not Judge WATTS erred in dismissing the action was not appealed, the holding of the trial court that the information was in fact deficient, and could not be amended without prejudicing the defendant, must for purposes of this appeal be regarded as the law of the case.

In *Somerville* the dismissal was moved by the government, over the objection of the defendant. Because the indictment was defective, even if a conviction had been obtained it would of necessity had to have been reversed on appeal. The supreme court held that "manifest necessity" for the termination of the trial was established and that under those facts a retrial of the issue, with a proper indictment, did not violate the double jeopardy clause. The case, of course, is even stronger where the motion to dismiss, or for a mistrial, is made by the defendant, and we have so held in the case where the motion for mistrial is made by the defendant and granted by the trial court. *See: State v. Elkinton* (1972), 56 Wis. 2d 497, 202 N. W. 2d 28.

For other holdings that a defendant convicted on an invalid indictment, where the conviction is reversed on appeal, may be retried without violating the double jeopardy clause, *see United States v. Wiley* (8th Cir. 1973), 478 Fed. 2d 415, 417, and cases there cited.

The defense also argues that the long period of time that has elapsed since the alleged offense and the present would dictate a dismissal of these charges on the ground that the defendant's right to a speedy trial under the Constitution of the United States has been violated.

This court has recently discussed the "speedy trial" principle in the case of *Hadley v. State* (1975), 66 Wis. 2d 350, 225 N. W. 2d 461. There are important factors in

the *Hadley Case* that are not present in this one. In *Hadley*, the delay of eighteen months between arraignment and trial was solely attributable to the state. In this case there is no allegation that the state has delayed the trial at any point. Also in *Hadley* the defendant frequently demanded a trial and complained of the delay in trial. In this case the defendant has not made any such complaints or demands. The defendant in this case has not shown any prejudice to his defense as a result of the time lapse. The defendant calls our attention to the case of *Dickey v. Florida* (1970), 398 U. S. 30, 90 Sup. Ct. 1564, 26 L. Ed. 2d 26. In that case the state had waited eight years to bring the defendant to trial, during a period when he was incarcerated on unrelated federal charges, and the supreme court barred further prosecution. Here, no allegation is made that the state has in any way delayed the prosecution. We are unable to say that as a matter of law the defendant has been denied a speedy trial under the criteria set up in *Hadley*. Likewise, there is no showing that the defendant's right to due process has been violated.

*By the Court.*—The order of the trial court is reversed and case remanded.