STATE of Wisconsin, Plaintiff-Respondent,

v.

Leonard BROWN, Defendant-Appellant.†

Court of Appeals

*No. 83–820–CR. Submitted on briefs January 19, 1984.—
Decided March 9, 1984.*
(Also reported in 348 N.W.2d 593.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Donna L. Hintze,* assistant state public defender, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, with *Michael R. Klos* and *Jeffrey M. Gabrysiak* of counsel, of Madison.

Before Wedemeyer, P.J., Decker and Moser, JJ.

DECKER, J.   Leonard Brown (Brown) appeals from a judgment of conviction of first degree murder and armed robbery and from an order denying post conviction relief. On appeal, he argues that violations of the detainer statute, sec. 976.05, Stats., required the trial court to dismiss the case, that the trial court erred in refusing to give lesser included offense instructions to

the jury, that a self-incriminating statement admitted at trial was involuntary, that blood and saliva samples were unconstitutionally taken from him, that the trial court erred in refusing to give the jury written instructions on all applicable substantive law, and that the trial court acted in excess of its authority in imposing a sentence consecutive to one being served by him in another state. We are persuaded that the trial court committed reversible error in refusing to give the lesser included offense instruction of second degree murder while giving the intoxication instruction and in then refusing to give the jury a written copy of the intoxication instruction. Accordingly, we reverse and remand for a new trial.

On October 13, 1979, Kay Thomas was awakened in her home by an armed man who demanded her purse. Thomas and her daughter were then bound and gagged. Rose Powell, Thomas' niece, then entered and was also bound and gagged. Another of Thomas' daughters and Powell's sister, Mary, came in, and were ordered, along with all the others save Powell, to go into a large closet. In addition to other noises, they heard three gunshots. The man opened the closet door and told them to be quiet. After a few minutes, when they thought it safe, they left the closet and found Powell dead in the kitchen. She had been killed by three close range gunshots to the head. Forensic tests also established the presence of semen on her clothing and in her vaginal area. Brown's photograph was identified the following day by three of those present at the crime.

Brown was arrested in Long Beach, California, on December 8, 1979 on other charges. Brown was very excited at the time and resisted arrest. Upon being put in the police car, he said to the officers, "I'll tell you everything. I'll tell you about Lloyd Bobby. He made me shoot a girl in Milwaukee. I shot her three times." He

was then given his *Miranda* rights, which he waived, according to an officer's testimony.

Brown was brought back to Wisconsin under the detainer statute, sec. 976.05, Stats. He filed a pre-trial motion to dismiss on the ground that he was denied a pre-transfer hearing in California. He further contended that he had not been brought to trial within the appropriate 120 day period. The trial court denied the motion, apparently under the assumption that a 180 day limit applied and that Brown had not sought a pre-transfer hearing.

At trial, the trial court instructed the jury on the defense of intoxication to the first degree murder charge, but refused to give a second degree murder instruction. Brown's counsel asked the trial court to provide the jury with a complete set of written instructions. The trial court did not give the intoxication instruction to the jury in written form but did give the first degree murder and armed robbery instructions in written form.

Brown was found guilty of both first degree murder and armed robbery. The sentences were made consecutive to any sentence in California applicable to Brown.

We first address Brown's two issues concerning jury instructions. The trial court instructed the jury on first degree murder and the intoxication defense but refused to submit a second degree murder instruction. The trial court also did not give the jury a written copy of the intoxication instruction. We agree with Brown that both of these actions were error.

Concerning the former of these, the state, rather than defending the trial court's action, argues that the trial court erred in giving the intoxication instruction at all. At trial, however, the prosecution did not object to the giving of the intoxication instruction. Failure to object to the form of a jury instruction generally constitutes a

waiver of any error in the instructions. *State v. Kemp,* 106 Wis. 2d 697, 703, 318 N.W.2d 13, 17 (1982). Even were we not to hold the state estopped from raising this issue, we would have to conclude there to have been no error in the trial court's giving the intoxication instruction. A trial court has wide discretion in issuing jury instructions. *State v. Clausen,* 105 Wis. 2d 231, 240, 313 N.W.2d 819, 824 (1982). Here, Brown testified that, on the evening before the murder, he smoked a PCP cigarette, took two "Black Beauties" (amphetamines), and drank a pint of scotch whiskey. Further, a police officer testified that Brown told him that he was constantly high on drugs between July and October, 1979.

While this may not be overwhelming evidence of intoxication at the time of the offense, we cannot conclude, as the state would have us do, that the intoxication evidence was insufficient as a matter of law and that the trial court abused its discretion in giving the instruction. While we recognize that the level of intoxication required to negate the intent to commit a crime is substantial, *see State v. Schulz,* 102 Wis. 2d 423, 429–34, 307 N.W.2d 151, 156–58 (1981), we also recognize the deference to be accorded trial courts in their exercise of discretion.

We now must turn to the trial court's refusal to give a lesser included offense instruction on second degree murder although it gave an intoxication instruction. Intoxication, if established to the degree required, negates intent and reduces murder in the first degree to murder in the second degree. *Ameen v. State,* 51 Wis. 2d 175, 185, 186 N.W.2d 206, 212 (1971). When the trial court gave the intoxication instruction, it acknowledged that Brown's state of mind was in issue.

Our supreme court has stated that if a trial court fails to submit lesser included offense instructions when, as a matter of law, it should, its failure to do so constitutes

prejudice to the defendant. *Boyer v. State,* 91 Wis. 2d 647, 669, 284 N.W.2d 30, 38–39 (1979). Lesser included offense instructions are to be submitted where the evidence reasonably admits of conviction on either the greater or lesser offense. *Id.* at 667, 284 N.W.2d at 38. We are persuaded that evidence of intoxication sufficient to merit an intoxication defense instruction could lead a reasonable jury to convict on either first or second degree murder. We conclude that it was inconsistent and error for the trial court to instruct on intoxication but refuse to permit the lesser included offense question to go to the jury.

We now turn to the trial court's failure to send to the jury room a written copy of the intoxication instruction. Again, and for the same reasons as above, we reject the state's contention that it was error to give the intoxication instruction at all. Further, we reject the state's argument that Brown waived his right to request a written intoxication instruction. While it is true that Brown's alternative request was for particular written instructions, which list did not include the intoxication instruction, it is equally true that Brown's initial request was for "quote 'a complete set of written instructions' unquote, pursuant to 972.10(5) of the Wisconsin Statutes." There is certainly sufficient particularity in this request to constitute an avoidance of waiver.[1]

Having concluded that it was error for the trial court not to have submitted the intoxication instruction to the

[1] While the state does not concede that an intoxication instruction is a matter of substantive law under *In re E.B.,* 111 Wis. 2d 175, 189, 330 N.W.2d 584, 591 (1983), its counter argument assumes so. While the intoxication instruction does not, on its face, neatly fit into either "substantive" or "procedural" law as defined by *E.B., id.,* we are persuaded that an instruction setting forth a defense to a crime is as substantive as is one which sets forth the crime itself. There is nothing inherently "procedural" about an intoxication defense.

jury in writing, we are obliged, under *In re E.B.*, 111 Wis. 2d 175, 188 n. 6, 330 N.W.2d 584, 591 n. 6 (1983), to apply a harmless error analysis. An instructional error is harmless if it cannot reasonably be said that, had such error not been committed, the verdict might probably have been different. *Werner v. State,* 66 Wis. 2d 736, 750, 226 N.W.2d 402, 408 (1975). Here, we cannot escape the fact that the instruction not submitted in writing was an instruction setting forth a defense to a first degree murder charge. Given the gravity of such an instruction's role in the case before us, we can reasonably say that, had the error not been committed, the verdict might probably have been different. We conclude that the error was not harmless and reverse and remand for a new trial.

Although our reversal of this case on the two above issues does not oblige us to address the remaining issues, we will do so briefly.

Brown argues that the failure to give him a pre-transfer hearing in California and the failure to try him within 120 days of his arrival in Wisconsin, constituted grounds for dismissal of the Wisconsin charges. We disagree.

We first address the 120 day time limit. Under article IV of the agreement on detainers, sec. 976.05(4), Stats., trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state, "but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." Sec. 976.05(4)(c). Before trial, it was apparent that both the trial court and the prosecution mistakenly assumed that this was an article III detainer, which has a 180 day time limit. The state now concedes that error. Brown was brought to trial more than 120 days but less than 180 days after his return to Wisconsin. The trial court, be-

lieving the 180 day limit to be applicable, found no time violation of the detainer statute.

Despite the trial court's reliance upon the wrong time limit, we conclude that there is no reversible error here. It is immaterial what ground the trial court assigned as the reason for its ruling if it be in fact correct. *State v. Alles*, 106 Wis. 2d 368, 391, 316 N.W.2d 378, 388 (1982).

Brown arrived in Milwaukee on October 8, 1981; the 120 day limit then began to run, and would expire, by Brown's accounting, on February 8, 1982. At a scheduling hearing on November 2, 1981, the following colloquy took place between the trial court and Brown's trial counsel:

MR. DALL'OSTO: Attorney Ray Dall'Osto appearing in Court and on behalf of the defendant Leonard Brown.

. . . .

At this time we would like to set a date for a Jury Trial and also if the Court so pleases a separate date for motions as well as pre-trial. If the Court doesn't go by that policy—

COURT: I think we can set the entire matter at one time.

MR. DALL'OSTO: Fine. Now the situation with this case we will probably for the defense file motions challenging identification procedures as well as searches and statements. There also may well be motions challenging the bringing of Mr. Brown from California under the Uniform Detainer Act. In order to support this and also prepare for trial I am going to request some Courts in California where Mr. Brown has previously been tried, transcripts of certain testimony in which State's witnesses in this case testified previously regarding some procedures in California in regard to sentencing.

*I think the time line on getting these things would put us out until the early part of next year. I think a February date woud be amenable to myself as well as the State and I understand that is also amenable to the Court's calendar.*

. . . .

CLERK: The trial is February 17th, 1982 and 9 a.m. February 12th is the date for status at 8:30 in the morning.
COURT: This will probably take three or four days?
MR. DALL'OSTO: I would say a week all together.
COURT: Okay.
Fine.
[Emphasis added.]

Brown acknowledges that his rights under the detainer act are statutory in nature and may be waived by a defendant's request for a procedure inconsistent with its provisions. *See, e.g., United States v. Odom,* 674 F.2d 228, 230 (4th Cir.), *cert. denied,* 457 U.S. 1125 (1982) [and cases cited therein]. Brown contends that his request for a February trial date did not constitute a procedure inconsistent with his right to a trial within 120 days because the trial court could have scheduled a trial date on or before February 8 and still complied with the time strictures. We conclude that his request for a February trial date and his failure to object to a date after February 8 was tantamount to waiving the 120 day limit for the duration of February. We therefore find no infirmity with the trial court's determination concerning the time limit.

Turning to the question of a pre-transfer hearing, we begin by noting that there is nothing in the record to challenge Brown's claim that he sought a hearing but was denied one. Brown contends that the remedy for failure to grant a pre-transfer hearing is dismissal of the charges. We disagree.

The requirement for an article IV pre-transfer hearing on detainers is derived from protections afforded under the Uniform Criminal Extradition Act and was authoritatively mandated in *Cuyler v. Adams,* 449 U.S. 433 (1981). However, the only remedy afforded by the Supreme Court in that case, which involved, as here, the

failure to provide an article IV pre-transfer hearing, was civil relief under 42 USC § 1983. *Id.* at 450. We further note that dismissal is provided, by statute, as a remedy only if a trial is not had prior to the detainee's return to the sending state (sec. 976.05(4)(e), Stats.), if the receiving authority refuses or fails to accept temporary custody of the detainee (sec. 976.05(5)(c)) or if the action is not brought within the appropriate time limits (sec. 976.05(5)(c)). No statutory provision is made for dismissal with prejudice for failure to hold a pre-transfer hearing.

We are persuaded by *Cody v. Morris,* 623 F.2d 101 (9th Cir. 1980), decided before *Cuyler, supra.* There, the ninth circuit found no need to determine whether Cody had a right to such a hearing (a question which the *Cuyler* Court answered in the affirmative) "because the denial of such a right would not take away from [the receiving state] its power to try him." *Cody, supra* at 103. The ninth circuit quoted *Myers v. Rhay,* 577 F.2d 504, 510 (9th Cir.), *cert. denied,* 439 U.S. 968 (1978):

"This Circuit adheres to the well-established principle of *Ker v. Illinois,* [119 U.S. 436, 7 S. Ct. 225, 30 L. Ed. 421 (1886)], and *Frisbie v. Collins,* [342 U.S. 519, 72 S. Ct. 509, 96 L. Ed. 541 (1952)], that even the forcible return of a defendant to the jurisdiction in which he is tried is no bar to the prosecution of him once he is present in the forum state."

*Cody, supra.*

No Wisconsin authority to the contrary has been discovered by us or cited to us. We are persuaded by *Cuyler* and *Cody* that dismissal is neither required nor desirable for failure to hold a pre-transfer hearing.

We are equally unpersuaded by Brown's contention that the taking of blood and saliva samples from him were unconstitutional seizures because done without a

warrant; the search was in fact conducted pursuant to a court order. We are convinced that, given the circumstances, Brown was accorded the same constitutional protections under the court order as he would have had, had a search warrant been issued.

In his brief-in-chief, Brown neither challenges that grounds existed for the issuance of a search warrant nor suggests what protections he was denied by the using of a court order. Only in his reply brief does he point out that, under sec. 968.12, Stats., a search warrant "shall be based upon sworn complaint or affidavit, or testimony . . . showing probable cause therefor." He contends that the district attorney making the motion was not under oath, had no supporting affidavit, and made only general allegations. This ignores the fact that, at the time of the motion for blood and saliva samples, a preliminary hearing had already been held at which one of the victims, under oath, identified Brown. Because probable cause had been established at a hearing prior to this motion, we are persuaded that Brown was accorded as much constitutional protection under this court order as he would have had under a search warrant.

We reject Brown's contention that some of his statements to police were inadmissible as involuntary. He does not challenge the trial court's findings, only its conclusion of voluntariness. Our supreme court has stated that the findings and conclusions of a trial court in a *Goodchild* hearing will not be upset unless they are against the great weight and clear preponderance of the evidence. *State v. Wedgeworth,* 100 Wis. 2d 514, 523, 302 N.W.2d 810, 815 (1981). Our review of the record persuades us that they are not to be upset here.

Finally, Brown challenges the authority of the trial court to impose a sentence to be served consecutively to a sentence in another state. While this question is effec-

tively mooted by our reversal of the conviction, we do note that we are persuaded that sec. 973.15, Stats., (1979), authorizes, in subsec. (2), the imposition of sentences consecutive to "any other sentence."

*By the Court.*—Judgment and order reversed and cause remanded for a new trial.