STATE of Wisconsin, Plaintiff-Respondent,

v.

Mohammed A. NONAHAL, Defendant-Appellant.

Court of Appeals

*No. 00–0603–CR. Submitted on briefs November 7, 2000.—Decided January 18, 2001.*

2001 WI App 39

(Also reported in 626 N.W.2d 1.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David R. Karpe* of *David R. Karpe Law Office*, of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Michael R. Klos*, assistant attorney general.

Before Vergeront, Roggensack and Deininger, JJ.

¶ 1. ROGGENSACK, J. Mohammed Ali Nonahal appeals his conviction for operating a motor vehicle without the owner's consent as party to the crime. He claims that the circuit court violated the anti-shuttling provision of the Interstate Agreement on Detainers (IAD) by returning him to federal prison despite the existence of pending charges in Wisconsin. As a result, he argues, the circuit court erred in refusing to dismiss the Wisconsin charges. Because Nonahal waived his rights under the anti-shuttling provision of the IAD when he asked to be sent back to the federal prison before trial, we affirm the judgment of the circuit court.

## BACKGROUND

¶ 2. While Nonahal was serving a prison sentence at the Federal Correctional Institution in Sandstone, Minnesota (FCI Sandstone), he was brought, as the result of what he contends was a detainer, to stand trial in Dane County on a charge of operating a motor vehicle without the owner's consent as party to the crime. Unrepresented by counsel, he appeared at a March 9, 1998, motion hearing and asked the court to appoint counsel for him. He also informed the court that he was preparing a federal

appeal for which he had already received three extensions and that he had left legal documents at FCI Sandstone that he needed to prepare the appeal. The court, Nonahal, and the prosecutor then discussed scheduling the Dane County trial:

THE DEFENDANT: Your Honor, I was wondering, can it be postponed further? I can go back [to FCI Sandstone] and attend to—like I said, I am not saying one [case] is more important than the other. I am trying to face my responsibility to both just as equally. *If I can go and come back, I would really appreciate it more than anything.*

THE COURT: What else have we got?

(Further discussion off the record.)

THE COURT: The best I can do for both of you is to set it for jury draw on May 4th with trial on May 5th and May 6th. That is Tuesday and Wednesday.

MS. ROHRER: That would be fine.

THE DEFENDANT: Thank you very much.

THE COURT: You want to do it that way?

THE DEFENDANT: Yes, please.

MS. ROHRER: Prior to him going back though I would like the counsel and I to maybe have a status conference.

THE COURT: *I am not going to let you go back until an attorney has been appointed for you.*

THE DEFENDANT: How soon?

THE COURT: Well, it should be some time this week.

THE DEFENDANT: *Okay, that would be fine.*

THE COURT: It should be sometime this week so you should let them know upstairs that he is not to be returned until I authorize his return, and I will authorize his return as soon as an attorney is appointed for him and gets an opportunity to talk to him. I will—my office will contact the public defenders office and explain this to them and that

they should get someone . . . appointed to represent you *so that you can go back sometime later this week and take care of your federal thing, but you will be back here again on the week of May 4ᵗʰ. Do you understand that?*

THE DEFENDANT: *Yes your Honor.* (Emphasis added.)

¶ 3. An attorney was appointed for Nonahal, and he was returned to FCI Sandstone. Subsequently, he moved to dismiss the charge on the ground that the court had violated the anti-shuttling provision of the IAD (codified as WIS. STAT. § 976.05(4) (1999–2000)[1]) by returning him to FCI Sandstone before his trial. The circuit court denied the motion, concluding that he had waived his rights under the IAD. Nonahal was convicted and sentenced to thirty months imprisonment, consecutive to his federal sentence. He appeals.

## DISCUSSION

**Standard of Review.**

■

¶ 4. Whether the IAD was violated is a question of law that we review *de novo. State v. Eesley,* 225 Wis. 2d 248, 253–54, 591 N.W.2d 846, 849 (1999).

**Interstate Agreement on Detainers.**

■

¶ 5. A detainer is a "notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." *Id.* at 258, 591 N.W.2d

---

[1] All further references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

at 851, *citing United States v. Mauro*, 436 U.S. 340, 359 (1978). Wisconsin has adopted the IAD as WIS. STAT. § 976.05, which provides in relevant part:

> **(4)** ARTICLE IV. (a) The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom the officer has lodged a detainer and who is serving a term of imprisonment in any party state made available . . . upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated . . . .

Subsection 976.05(4) also prohibits shuttling a prisoner between the requesting state and the original place of imprisonment:

> (e) If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment . . . such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

¶ 6. Nonahal argues that the circuit court erred in concluding that he had waived the anti-shuttling provision of WIS. STAT. § 976.05(4) for two reasons: (1) he never affirmatively requested to be treated in a manner contrary to the anti-shuttling provision; and (2) violations of the anti-shuttling provision are violations of a fundamental right and therefore he could not have waived his rights under the IAD without the presence of counsel. We disagree on both points.

¶ 7. No Wisconsin case addresses whether the rights conferred under the anti-shuttling provision of Article IV of the IAD are fundamental rights. However,

we have concluded that rights conferred under another section of Article IV, rather than fundamental, are statutory in nature. *State v. Brown*, 118 Wis. 2d 377, 386, 348 N.W.2d 593, 598 (Ct. App. 1984). Brown, who was incarcerated in California, was brought to Wisconsin to stand trial for murder under Article IV of the IAD, which required that he be brought to trial within 120 days.[2] The 120-day limit was to expire on February 8, and Brown's attorney requested a February trial date. Mistakenly believing that Brown was present in Wisconsin under Article III of the IAD (which requires trial within 180 days), the circuit court set a trial date of February 17. Brown's attorney did not object, and Brown was tried and convicted. We concluded that Brown's rights under the time-limit provision of Article IV of the IAD were statutory, not fundamental, so he could waive them by requesting a procedure inconsistent with its provisions and failing to object to a trial date scheduled outside the time limit. *Id.*

¶ 8. The IAD is a "congressionally sanctioned interstate compact [and therefore] is a federal law subject to federal construction." *New York v. Hill*, 528 U.S. 110, 111 (2000); *see also Cuyler v. Adams*, 449 U.S. 433,

---

[2] The IAD identifies two time limits related to detainers. Under Article III, a prisoner against whom a detainer has been lodged may request final disposition of the charges upon which the detainer is based. WIS. STAT. § 976.05(3)(a). Trial must take place within 180 days *of the request. Id.* (emphasis added). Under Article IV, the jurisdiction that issued the detainer may request that the prisoner be made available for trial on the charges that form the basis for the detainer. Section 976.05(4)(a). It requires trial within 120 days *of the prisoner's arrival in the requesting state.* Section 976.05(4)(c) (emphasis added).

442 (1981). Every federal circuit that has considered the issue on which this appeal turns has concluded that a prisoner may waive the rights conferred by the anti-shuttling provision of the IAD as long as the waiver is voluntary. *United States v. Oldaker*, 823 F.2d 778, 780 (4th Cir. 1987); *Webb v. Keohane*, 804 F.2d 413, 414 (7th Cir. 1986); *United States v. Eaddy*, 595 F.2d 341, 344 (6th Cir. 1979); *United States v. Black*, 609 F.2d 1330, 1334 (9th Cir. 1979); *Gray v. Benson*, 608 F.2d 825, 826 (10th Cir. 1979); *United States v. Ford*, 550 F.2d 732, 742 (2d Cir. 1977), *aff'd sub nom. United States v. Mauro*, 436 U.S. 340 (1978). It is not necessary for the prisoner to knowingly and intentionally relinquish his rights under the anti-shuttling provision of the IAD; even if he is unaware of his rights, he may waive them by requesting contrary treatment.[3] *Eaddy*, 595 F.2d at 344. A request for contrary treatment can include a

---

[3] Fundamental rights must be knowingly and intelligently relinquished. A fundamental right is one guaranteed to the defendant by the Constitution to preserve a fair and impartial trial. *United States v. Black*, 609 F.2d 1330, 1334 (9th Cir. 1979); *State v. Hereford*, 224 Wis. 2d 605, 614, 592 N.W.2d 247, 251 (Ct. App. 1999). Because "[t]he protections of the IAD are not founded on constitutional rights, or the preservation of a fair trial, but are designed to facilitate a defendant's rehabilitation . . . and to avoid disruptions," the rights it confers are not constitutional. *Black*, 609 F.2d at 1334.

Nonahal cites *United States v. Williams*, 615 F.2d 585 (3d Cir. 1980), for the proposition that the anti-shuttling provision of the IAD is a fundamental right that therefore requires a knowing and intelligent waiver. *Williams*, however, concludes only that a claimed IAD violation is a "fundamental defect" sufficient to support a collateral attack on a criminal conviction under 28 U.S.C. § 2255 (1976). *Williams*, 615 F.2d at 591. This holding is not conclusive of the issue of whether a violation of the anti-shuttling provision of the IAD is a fundamental right.

request for transfer to the original place of imprisonment before final disposition of the charges. *Webb*, 804 F.2d at 414. The prisoner may waive his anti-shuttling rights because that provision exists "to benefit the prisoner by allowing continuous rehabilitation in one location, but the prisoner can decide he prefers the benefits of being transferred elsewhere." *Id.* at 415. Therefore, we conclude that rights granted under the anti-shuttling provision of the IAD are statutory in nature and may be waived if the prisoner requests a procedure inconsistent with the statute's provisions.

¶ 9. Turning to the facts of this case, we conclude that Nonahal affirmatively requested to be treated in a manner contrary to WIS. STAT. § 976.05(4)(e), the anti-shuttling provision of the IAD, and that his request constituted a waiver of these rights. Nonahal told the court that he was preparing a federal appeal and that he had left his documents at FCI Sandstone. After a scheduling discussion, he asked the court to further postpone his Dane County trial to allow him to return to FCI Sandstone to work on his federal appeal, then return to Dane County for trial. In response, the court set a schedule to allow him time to get representation and to return to FCI Sandstone to complete his federal appeal. Nonahal told the court that he understood these arrangements, and he did not object to them. His affirmative request to return to FCI Sandstone was sufficient to waive his rights under para. § 976.05(4)(e), which exist to allow him continuous rehabilitation in a single location. He voluntarily chose to waive those rights, and he cannot now complain that they were violated.

## CONCLUSION

¶ 10. Because Nonahal waived his rights under the anti-shuttling provision of the IAD when he asked to be returned to the federal prison before trial, we affirm the judgment of the circuit court.

*By the Court.*—Judgment affirmed.