STATE of Wisconsin, Plaintiff-Appellant,

v.

Andrew S. MILLER, Defendant-Respondent.†

Court of Appeals

*No. 02–0851–CR. Submitted on briefs January 9, 2003.—
Decided March 12, 2003.*

2003 WI App 74

(Also reported in 661 N.W.2d 466.)

† Petition to review denied 6-12-03.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Michael R. Klos*, assistant attorney general, and *James E. Doyle*, attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Brian C. Findley*, state public defender, Madison.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

¶ 1. ANDERSON, J. The State appeals from an order of the trial court dismissing with prejudice the criminal complaint against Andrew S. Miller on the grounds that the State violated the speedy trial provisions of the Interstate Agreement on Detainers (IAD),

WIS. STAT. § 976.05 (1999–2000).[1] We hold that Miller waived his right to a speedy trial by his conduct, discharging his attorney six days before the scheduled trial and agreeing to a trial date outside of the 180–day limit. Therefore, we reverse and remand for further proceedings.

¶ 2. The IAD "is a congressionally sanctioned interstate compact that establishes procedures for the transfer of a prisoner in one jurisdiction to the temporary custody of another." *State v. Grzelak*, 215 Wis. 2d 577, 580, 573 N.W.2d 538 (Ct. App. 1997).

> The IAD developed out of a growing concern about the effect outstanding detainers have on prisoners themselves and the prison system in general. Thus, in its explicit findings, the IAD recognized that outstanding criminal charges in another jurisdiction "produce uncertainties which obstruct programs of prisoner treatment and rehabilitation."
>
> The IAD serves two express purposes. The first is to protect prisoners by "encourag[ing] the expeditious and orderly disposition of such [outstanding] charges [against a prisoner] and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." The second purpose is to provide "cooperative procedures" to effectuate a more uniform and efficient system of interstate rendition.

*State v. Eesley*, 225 Wis. 2d 248, 260–61, 591 N.W.2d 846 (1999) (citations omitted).

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

¶ 3. WISCONSIN STAT. § 976.05(3)(a) provides that a prisoner who is aware that a detainer[2] has been filed against him or her "shall be brought to trial within 180 days" after delivering to the prosecutor and the court, in the jurisdiction that filed the detainer, a written request for final disposition of the charges. The court may grant any reasonable and necessary continuance if the requesting party establishes "good cause." Section 976.05(5)(c) provides that if the trial on the pending charges is not commenced within 180 days of the prisoner's return to the requesting state, the charges must be dismissed with prejudice.

¶ 4. Miller was an inmate of the St. Cloud Correctional Center in Minnesota when charges of burglary, grand theft, damage to property, and three counts of theft of a firearm were filed against him in Walworth county. Miller mailed a request for prompt judicial disposition of the matter to the Walworth county district attorney, which was received on February 1, 2001.[3] The 180–day time frame in which to commence the trial would therefore have ended on July 31, 2001. Miller was returned to Wisconsin on or about March 13, 2001, and appeared for an initial hearing on March 14, 2001.

¶ 5. During Miller's arraignment on March 27, 2001, Miller's trial counsel said that he would enter a not guilty plea and "at this point not invoke his right to a speedy trial." The court said that the "question here is

---

[2] "A detainer is a 'notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.' " *State v. Nonahal*, 2001 WI App 39, ¶ 5, 241 Wis. 2d 397, 626 N.W.2d 1.

[3] The State's brief indicates that the district attorney received the request on February 13. However, the trial court found that the request was received on February 1.

getting the trial within the detainer" and the parties agreed to a status conference on April 19, 2001.

¶ 6. During the April 19, 2001 conference, the court asked if either party wished to request a speedy trial, and Miller's counsel replied, "Not from Mr. Miller's standpoint." The parties agreed on a trial date of July 9–11, 2001. On July 3, 2001, Miller's attorney filed a motion to withdraw as counsel. The court held hearings on the motion, at which Miller's counsel explained that Miller had fired him on July 3, 2001. The court granted the motion and adjourned the July 9, 2001 trial date. The court commented that "speedy has been waived before for trial; but in any case, it is the defendant who causes the delay in this particular case because of his desire for new counsel." New counsel was appointed. At a status conference on July 13, counsel asked for two weeks to "get up to speed" and negotiate with the State.

¶ 7. Another status conference was held on July 31, 2001, and defense counsel requested a trial date. He advised the court that the defense did not request a speedy trial. The trial court asked, "Is that right, Mr. Miller? You are not requesting a speedy trial at this time?" Miller replied, "No." The court set a date of November 26–28, 2001, to which defense counsel agreed. That trial was delayed, apparently because it was "bumped" by the clerk's office due to a scheduling conflict.

¶ 8. On January 3, 2002, the assistant district attorney notified the court that there was a problem with the speedy trial provisions of the IAD. Defense counsel responded with a motion to dismiss because the defendant "was not brought to trial pursuant to Sec. 971.11(2), Wis. Stat., within 120 days after the State's receipt of the request under [WIS. STAT.] Sec. 971.10." The State argued that Miller had waived his right to a

speedy trial, but the court found that he had only waived his rights under § 971.10(2), not under the IAD. The trial court dismissed the criminal charges with prejudice, citing the Intrastate Detainer Act, § 971.11.[4]

¶ 9. On appeal, the State argues that Miller waived his right to a speedy trial by affirmatively stating on the record that he was not requesting a speedy trial and by agreeing to a trial date beyond the maximum 180–day time limit. Rights under the IAD are statutory and may be waived. *State v. Brown*, 118 Wis. 2d 377, 386, 348 N.W.2d 593 (Ct. App. 1984); *New York v. Hill*, 528 U.S. 110, 114 (2000). Wisconsin courts have found that "waiver under the IAD can be by conduct and does not require an express personal waiver on the record." *State v. Aukes*, 192 Wis. 2d 338, 345, 531 N.W.2d 382 (Ct. App. 1995).

¶ 10. Miller makes three arguments against waiver: First, that he waived only his rights to a speedy trial under Wis. Stat. § 971.10(2)(a) and not under the IAD; second, that the district attorney did not raise the issue of waiver of the IAD in the trial court and therefore cannot raise it here; and finally, that even if Miller did in fact waive his rights under the IAD, he only waived them until November 26, 2001, after which the State was in violation of the speedy trial provisions.

¶ 11. We reject Miller's and the trial court's attempt to make a distinction between Wis. Stat.

---

[4] The parties and the court were confused in relying upon the Intrastate Detainer Act, Wis. Stat. § 971.11, rather than the Interstate Agreement on Detainers, Wis. Stat. § 976.05, but since the intent of the two acts is the same, the error is inconsequential.

§ 971.10(2)(a) and the IAD such that Miller could have waived his rights under § 971.10(2)(a) and not under the IAD. Courts have found that a defendant need not be aware of the IAD's provisions, as Miller evidently was not, in order to waive them by requesting treatment inconsistent with them. *Michigan v. Jones*, 495 N.W.2d 159, 161 (Mich. Ct. App. 1992). We find persuasive the reasoning of the Fourth Circuit in *United States v. Odom*, 674 F.2d 228, 229–30 (4th Cir. 1982), a case in which counsel for the defendant and for the United States jointly requested and were granted a continuance under the Speedy Trial Act, only to have the defendant later seek to have charges withdrawn with prejudice because the case was continued three days beyond the 120–day limit specified by the relevant section of the Detainer Act. Citing the statutory principle that "related statutes having the same purpose should be construed together," the *Odom* court ruled that "delay that is lawful under the Speedy Trial Act generally will comply with the mandate of the Detainer Act." *Id.* at 231. The *Odom* court further held:

> When represented in proceedings at which a judicial officer grants a delay, lawful under the Speedy Trial Act, a defendant may not assert that compliance with that Act infringes his rights under the Detainer Act, unless he raises an objection based on the Detainer Act.

*Id.* at 231–32 (footnote omitted).

¶ 12. This court has found that rights under the Detainer Act "are statutory in nature and may be waived by a defendant's request for a procedure inconsistent with its provisions." *Brown*, 118 Wis. 2d at 386. By firing his lawyer six days before the scheduled start of trial and twenty-eight days before the expiration of the time period, Miller requested such a procedure.

■

¶ 13. Miller's second argument is that the district attorney did not argue at trial that Miller had waived his speedy trial rights under the IAD and so the State has waived that issue on appeal. Although the district attorney did not cite the cases cited in the State's brief, the trial court understood her to be arguing for waiver of the IAD and addressed that issue. The court stated, "[T]here were other things that [Miller] did do; such as, waive speedy trial demand, but that's really not the same as this interstate detainer demand." The core issue was raised, and it is a question of law that does not involve any disputed facts. The application of law to a set of undisputed facts is reviewed de novo. *State v. Bodoh*, 226 Wis. 2d 718, 724, 595 N.W.2d 330 (1999).

■

¶ 14. Alternatively, Miller argues that even if he did waive his rights under the IAD, he only waived them for the time up until his last scheduled November trial date. He argues that even if his action tolled the time limits of the IAD from July 3, 2001, to November 2001, the State still failed to try him in a timely manner. However, he cites no authority for the proposition that rights to a speedy trial can kick in after they have been waived. The law is that a defendant "cannot be heard to complain about delay caused by his own conduct," and that such conduct "need not be called delaying tactics to be identified as time consuming impediments to an early trial." *Norwood v. State*, 74 Wis. 2d 343, 357, 246 N.W.2d 801 (1976). Having asked for, and accepted, treatment inconsistent with his rights under the IAD, the defendant cannot then assert those rights in an effort to win dismissal of charges.

*By the Court.*—Order reversed and cause remanded.