STATE of Wisconsin, Plaintiff-Respondent,

v.

Jeffrey TOWNSEND, Defendant-Appellant.†

Court of Appeals

*No. 2003AP429–CR. Submitted on briefs April 4, 2006.*
*—Decided August 1, 2006.*

2006 WI App 177

(Also reported in 722 N.W.2d 753.)

† Petition to review granted 10/10/06.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Ellen Henak*, assistant state public defender, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general and *William L. Gansner*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. WEDEMEYER, P.J.   Jeffrey Townsend returns to this court for completion of his appeal following a circuit court order denying his motion seeking to dismiss his judgment of conviction on the ground that the statutory procedures of the Interstate Agreement on Detainers (IAD)[1] were violated. He appeals from both the judgment and order. During the first part of his appeal we retained jurisdiction, but remanded for an evidentiary hearing to flesh out additional factual development and place the burden of proof on the State. *See State v. Townsend*, No. 2003AP0429–CR, unpublished slip op. (WI App Jan. 13, 2004) (*Townsend* I). On remand, the trial court conducted evidentiary hearings and concluded that although the State of Illinois violated the notice provisions of the IAD, dismissal was not the appropriate remedy. Townsend claims that the trial court erred in reaching that determination and asks us to dismiss his conviction for armed robbery. Because dismissal of Townsend's Wisconsin conviction is not statutorily mandated, and is not a fair and appropriate remedy for the State of Illinois' violation of the IAD, we affirm.

---

[1] The Interstate Agreement on Detainers is a uniform act adopted by both Illinois, 730 ILL. COMP. STAT. ANN. 5/3–8-9 (West 2003) and Wisconsin, WIS. STAT. § 976.05 (2003–04), to promote prompt disposition of charges from one state, while the accused is being held by another state.

## BACKGROUND

¶ 2.    The underlying facts of this case are not in dispute and can be reviewed in *Townsend* I. *See id.* We recite a brief factual history and provide any pertinent additional facts, which have occurred since *Townsend* I. The State of Wisconsin charged Jeffrey Townsend with committing armed robbery with threat of force based upon an incident occurring on September 14, 1997. The State filed its complaint on November 5, 1997. A few days later, Milwaukee County Police Detective Joyce Olsen was notified by the Cook County Sheriff's Police in Chicago that Townsend was being held in Chicago on an unrelated charge. Olsen was advised that the sheriff was aware of Townsend's outstanding warrant for his conduct in Milwaukee, and that Townsend refused to sign a waiver of extradition.

¶ 3.    Detective Olsen began the process for a governor's warrant, which was signed by the governor of Wisconsin on December 23, 1997, and then forwarded to the State of Illinois. In February 1998, the Cook County Sheriff's Police informed Detective Olsen that Townsend was not ready for pickup at that time, but their office would advise Detective Olsen when Townsend was ready for pickup. The Cook County courts had a local policy in place, which prohibited a prisoner from waiving extradition if he had a local charge pending against him. When Townsend was sentenced to prison in Illinois, Wisconsin authorities lodged a detainer, pursuant to the IAD, with Illinois correction authorities.

¶ 4.    Townsend remained in the custody of the Illinois prison system until his parole. When he was paroled, Townsend waived extradition and voluntarily returned to Wisconsin to face the armed robbery

charge. Townsend was convicted of armed robbery with threat of force and was sentenced to nine years in prison.

¶ 5. During his first appeal, Townsend argued that the circuit court erred in denying his pretrial motion to dismiss his prosecution alleging that the State of Illinois violated the IAD. Townsend also alleged that the circuit court improperly allocated the burden of proof on him to show a violation of the IAD. Townsend conceded on appeal that Wisconsin law enforcement authorities did not violate the IAD in any respect. He argued that Illinois prison system officials violated the IAD because they did not specifically inform him of the charges against him, who lodged the detainer, or the procedures for requesting a final disposition of the Wisconsin charges under the IAD. He argued that because Illinois violated the notice provisions of the IAD, he lost his right to request a prompt disposition of the Wisconsin charge.

¶ 6. In December 2002, at oral argument before this court in *Townsend I*, the State conceded that it bore the burden of proving compliance with the IAD's notice provision, not the prisoner. This court agreed, held that the circuit court misallocated the burden of proof by requiring Townsend to prove noncompliance, and remanded the case for application of a proper burden of proof on the issue of compliance and for further evidentiary hearing to adequately develop the facts. On remand to the circuit court, an extensive evidentiary hearing was held over several days. At the evidentiary hearings, a myriad of factual information was presented pertaining to attempts made at locating a paper trail to determine whether Townsend had been provided with the proper notice requirements under the IAD, which are required following the filing of a detainer.

¶ 7.   After the hearing, the circuit court concluded that it would be impossible for the State of Wisconsin to prove Townsend was given proper notice of the detainer, due to the incompetence of the Illinois prison system. Succinctly put, no one who testified on behalf of Illinois could remember informing Townsend of anything regarding his rights under the IAD, and no records were properly kept that could clarify if and when Townsend was informed of his rights. With no evidence of compliance by Illinois, the court concluded "the burden of proof placed upon the State in this case appears impossible."

¶ 8.   The court concluded Wisconsin did everything required under the IAD to properly notify Townsend of the charges and that the problem was Illinois' failure to comply with the IAD. Additionally, the court concluded that vacating the conviction was neither mandated by the statutory language of the IAD, nor justified by the IAD's purpose of ensuring the prompt disposition of charges because Townsend had sustained no prejudice whatsoever to his fair trial rights by any delay in the disposition of the Wisconsin charge that may have occurred when Illinois failed to provide him with notice of the Wisconsin detainer. The court thus concluded it was not proper to dismiss the charges against Townsend based solely on Illinois' failure to comply with the IAD. Townsend now returns to this court for resolution of his appeal.

## DISCUSSION

*A. Standard of Review and Applicable Law*

¶ 9.   The issue in this case involves the interpretation of a statute and whether that statute, under the

established facts of this case, requires dismissal of the charge against Townsend. This issue presents a question of law, which we review independently. *See DOR v. Milwaukee Brewers Baseball Club*, 111 Wis. 2d 571, 577, 331 N.W.2d 383 (1983). The goal of statutory interpretation is to discern and to give effect to the intent of the legislature. *State v. Cardenas-Hernandez*, 219 Wis. 2d 516, 538, 579 N.W.2d 678 (1998).

¶ 10.   This appeal centers around the Interstate Agreement on Detainers act. The IAD establishes procedures that require cooperation between the "receiving state" that is requesting the person in custody, and the "sending state" that currently has custody of the accused. Wis. Stat. § 976.05(1) (2003–04).[2] When a receiving state lodges a detainer with the sending state, the official "having custody of the prisoner shall promptly inform the prisoner of the source and contents of any detainer lodged against the prisoner and shall also inform the prisoner of the prisoner's right to make a request for final disposition of the indictment . . . ." Wis. Stat. § 976.05(3)(c).

¶ 11.   The IAD, as adopted by Wisconsin, primarily has two purposes:

> The first is to protect prisoners by "encourag[ing] the expeditious and orderly disposition of such [outstanding] charges [against a prisoner] and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." The second purpose is to provide "cooperative procedures" to effectuate a more uniform and efficient system of interstate rendition.

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

*State v. Miller*, 2003 WI App 74, ¶ 2, 261 Wis. 2d 866, 661 N.W.2d 466 (citations omitted; brackets by *Miller*).

■

¶ 12.    The IAD statute lists three specific situations where dismissal under Wɪs. Sᴛᴀᴛ. § 976.05 is appropriate:    (1) if the prisoner requests final disposition under Article III and there is not a trial within 180 days, *see* Wɪs. Sᴛᴀᴛ. § 976.05(3)(d); (2) if the receiving state requests temporary custody under Article IV and there is no trial within 120 days of the arrival of the prisoner, *see* Wɪs. Sᴛᴀᴛ. § 976.05(4)(e); and (3) if the appropriate receiving authority refuses or fails to accept temporary custody of a prisoner, *see* Wɪs. Sᴛᴀᴛ. § 976.05(5)(c). The IAD does not prescribe an express sanction for a state's failure to promptly inform a prisoner of a detainer lodged against the prisoner. *See Sweaney v. District Court of Eighteenth Judicial Dist.*, 713 P.2d 914, 916–17 (Colo. 1986) *(en banc)*.

*B.    Application*

¶ 13.    Here, after hearing the extensive factual development of what occurred while Townsend was in the Cook County prison system, the trial court found that "the State of Wisconsin did everything required under the IAD to properly notify Townsend of the charges." However, the trial court found that Illinois failed to comply with the notification procedures of the IAD. Thus, there was a violation of the IAD. The trial court properly recognized thereafter that the real issue in this case is:    given the IAD violation by the State of Illinois, was dismissal of the Wisconsin charge against Townsend the proper remedy?

¶ 14.    The trial court referred to the IAD statute, Wɪs. Sᴛᴀᴛ. § 976.05, noting that the statute specifically lists three situations where dismissal of the charge is

appropriate. None of the three situations was present in the instant case. Based on these circumstances, the trial court concluded: "Since the legislature chose to mention only these three specific situations when dismissal of charges is the appropriate relief, this Court will not allow such relief to cover procedural errors made by Illinois officials." We agree with the trial court that the apparent failure of Illinois prison authorities to comply with the IAD does not warrant dismissal of the Wisconsin charge against Townsend.

¶ 15. It is clear from the record that Wisconsin properly lodged a detainer against Townsend with officials at the Illinois prison where he was serving a sentence under an Illinois conviction. In short, the State of Wisconsin did everything it was required to do under the IAD, and committed no violation. Once notified that Townsend was in custody in Illinois and had refused to waive extradition back to Wisconsin, the prosecutor promptly applied for a Wisconsin governor's extradition warrant for Townsend's return to this state. The governor of Illinois promptly granted the Wisconsin governor's request and issued a warrant for Townsend's return to this state. Townsend was properly retained by Illinois to stand trial and serve time for a crime committed there.

¶ 16. When Townsend was sentenced to prison in Illinois, Wisconsin authorities lodged a detainer with Illinois correctional authorities. Any violation that did occur was due to the total disarray of the Illinois prison system. None of the records kept by the Illinois prison system indicates whether Townsend was given proper notification. None of the witnesses testifying on behalf of the Illinois prison system were able to state with certainty whether Townsend was given proper notification.

¶ 17. Any IAD violation was the fault of Illinois, not Wisconsin. In light of this, we believe the extreme remedy of dismissing the *Wisconsin* charge against Townsend, which is not specifically mandated by the IAD, is not appropriate. We understand the appellant's frustration with the Illinois prison system's ineptness that led to a clear violation of the IAD, but the State of Wisconsin did not violate the IAD, and Townsend clearly knew of the Wisconsin charge and chose not to waive extradition and seek a quick resolution.[3] Under these circumstances, it would be contrary to public policy to permit Townsend to escape prosecution on the crime he committed in Wisconsin.

¶ 18. Further, although Townsend contends that the IAD violation prevented him from seeking prompt resolution of the Wisconsin charge so that he could have requested concurrent sentences, he does not allege that he was actually prejudiced by any violation. Namely, he does not assert that for some reason because of the delay he was unable to mount a defense to the Wisconsin charge. Accordingly, Townsend has failed to establish that he was prejudiced by Illinois' failure to comply with the IAD. *See State v. Russo*, 70 Wis. 2d 169, 177–78, 233 N.W.2d 485 (1975).[4]

[3] We held in *State v. Miller*, 2003 WI App 74, ¶ 11, 261 Wis. 2d 866, 661 N.W.2d 466, that the rights provided by the IAD may be waived. Waiver applies whether or not the defendant is aware of the IAD provisions when the defendant requests treatment inconsistent with IAD's provisions. *Id.*

[4] The trial court, in its order, addressed the issue of whether Townsend's speedy trial right had been violated under the circumstances of this case. The trial court concluded that the right had not been violated. We agree with the trial court's

¶ 19. Because we conclude that dismissal of the Wisconsin charge was not an appropriate remedy under these particular circumstances, we affirm.

*By the Court.*—Judgment and order affirmed.

¶ 20. CURLEY, J. (*dissenting*). The Interstate Agreement on Detainers (IAD) found at WIS. STAT. § 976.05 proclaims that, "The agreement on detainers is hereby enacted into law and entered into by this state with all other jurisdictions legally joined therein . . . ." It states that, "The contracting states solemnly agree," and then sets out the various provisions to which the states commit themselves. The act declares that the reason why the party states entered into the agreement is that "charges . . . and difficulties in securing speedy trial of persons already incarcerated . . . produce uncertainties which obstruct programs of prisoner treatment and rehabilitation." The act also states that the purpose of the agreement is to "encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." Thus, all the states who have passed the act have contracted to enforce the provisions of the act.

¶ 21. WISCONSIN STAT. § 976.05(3)(c) requires:

> The department, or warden, or other official having custody of the prisoner shall promptly inform the prisoner of the source and contents of any detainer lodged against the prisoner and shall also inform the prisoner of the prisoner's right to make a request for final disposition of the indictment, information or complaint on which the detainer is based.

analysis in that regard. Townsend does not specifically challenge this portion of the trial court's order and therefore, we decline to address it further.

Thus, once an affected person is notified of the detainer, he or she can notify the "receiving state" that he or she requests a final disposition. Upon receiving such a request, the "receiving state" has 180 days to try the outstanding charge. *See* WIS. STAT. § 976.05(3)(a).[1] However, here Townsend was never in a position to ask for a trial because Illinois violated the act by failing to notify him of the detainer. The trial court and the majority concede that this is the case, but make light of it, arguing that this failure does not require dismissal because the act lists specific situations where dismissal is appropriate and this lapse is not one of them. What the majority fails to point out is that the three situations where the act requires dismissal all assume that

[1] WISCONSIN STAT. § 976.05(3)(a) provides:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, the prisoner shall be brought to trial within 180 days *after the prisoner has caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of* the place of his or her imprisonment and *his or her request for a final disposition to be made of the indictment, information or complaint,* but for good cause shown in open court, the prisoner or the prisoner's counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility or date of release to extended supervision of the prisoner and any decisions of the department relating to the prisoner.

(Emphasis added.)

the affected person knew about the detainer and requested a final disposition. These situations are, as identified by the majority:

> (1) if the prisoner requests final disposition under Article III and there is not a trial within 180 days, *see* WIS. STAT. § 976.05(3)(d); (2) if the receiving state requests temporary custody under Article IV and there is no trial within 120 days of the arrival of the prisoner, *see* WIS. STAT. § 976.05(4)(e); and (3) if the appropriate receiving authority refuses or fails to accept temporary custody of a prisoner, *see* WIS. STAT. § 976.05(5)(c).

Majority, ¶ 12. Thus, according to the majority's logic, the "sending state" may simply disregard the initial provision to notify a prisoner of a detainer and the prisoner has no remedy. The majority's view is that it is irrelevant whether a prisoner is never told of the detainer and that the more serious consequence of dismissal comes into play only if one of the three situations listed above is satisfied. If this were indeed the law, I wonder why we bothered to remand this case to the trial court in Townsend's first appeal? He claimed that he was never given proper notification of the Wisconsin charge by the Illinois prison authorities. We could have told him then that regardless of who carries the burden of proving compliance with the act, even if he was correct, he had no remedy.

¶ 22. I also take issue with the majority's claim that Townsend has not shown prejudice. First, as the earlier opinion notes, unbeknownst to Townsend, he was classified as a "moderate escape risk" as a result of the outstanding Wisconsin charge which, presumably, prevented him from being assigned the more desirable tasks while in prison. More importantly, he was prejudiced by the fact that his trial for the Wisconsin charge was delayed for five years. If he had received the

identical sentence at an earlier trial, he would have already served five years of the nine-year sentence.

¶ 23.  Finally, the fact that Wisconsin played no part in this bureaucratic fiasco does not, in my mind, lead to the conclusion that the agreement should be ignored. This state signed on, indeed, contracted with the other states to abide by the terms of the agreement. The failure of a "party state" to follow the rules should not exempt Wisconsin from the consequences. For the reasons stated, I respectfully dissent.