STATE of Wisconsin, Plaintiff-Respondent,

v.

James L. BLACKBURN, Defendant-Appellant.†

Court of Appeals

*No. 97–0451–CR. Submitted on briefs September 9, 1997.—Decided October 23, 1997.*

(Also reported in 571 N.W.2d 695.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Suzanne Hagopian*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Mary V. Bowman*, assistant attorney general.

Before Eich, C.J., Dykman, P.J., and Roggensack, J.

DYKMAN, P.J. James L. Blackburn appeals from a judgment convicting him of second-degree sexual assault of a child. Blackburn claims that the State violated his speedy trial rights under the Interstate Agreement on Detainers (IAD), and thus, the complaint against him should have been dismissed with prejudice. We conclude that Blackburn did not comply with the procedures of the IAD. Therefore, we affirm.

## BACKGROUND

On February 7, 1995, the State charged Blackburn with second-degree sexual assault of a child as a repeater. On February 9, 1995, the La Crosse County Circuit Court issued a warrant for Blackburn's arrest. Blackburn, however, was incarcerated in an Illinois prison.

Illinois prison officials learned of this warrant while checking on Blackburn's eligibility for boot camp. The officials informed Blackburn of this warrant in March 1995. Blackburn wrote to the La Crosse Circuit Court about the warrant. The La Crosse County Clerk of Courts filed his "Motion to Dismiss 'Warrant' " letter on June 16, 1995. In this motion, Blackburn stated that he was at Shawanee Correctional Center in the Illinois

374

Department of Corrections and that he would "not come back to WI at no time." In addition, he wrote: "Defendant demands either the warrant be dismiss[ed] or defendant be extradited back to WI at once for a jury [trial]." On July 20, 1995, the clerk filed a second letter from Blackburn in which Blackburn requested a response to his first letter.

On July 27, 1995, the circuit court held a hearing on Blackburn's motion. At the hearing, the assistant district attorney agreed to inform the Illinois Department of Corrections of the arrest warrant against Blackburn and begin the process of bringing Blackburn to Wisconsin to face this charge. On August 1, 1995, the La Crosse district attorney's office filed a request for detainer. On August 11, 1995, an administrative officer at the Shawanee Correctional Center informed Blackburn of this detainer, his right to request final disposition of the complaint, and the proper procedures for doing so under the IAD. The officer also told Blackburn that the motion he sent in June 1995 would not invoke his rights under the IAD and that he would have to follow the proper procedures and sign the IAD forms. Blackburn signed the forms, but the next day sent a note to the prison office stating that he did not want extradition papers and that the procedures should be stopped. Blackburn took this action because he believed his "Motion to Dismiss 'Warrant' " letter was sufficient to begin the 180-day period under the IAD. On September 21, 1995, a "Request for Temporary Custody" was sent to Shawanee to bring Blackburn to trial in Wisconsin. Blackburn did not receive this request because he had been transferred to Menard Correctional Center.

On December 7, 1995, an official at Menard wrote to the La Crosse County Sheriff's Department asking

whether the county intended to exercise its detainer and place Blackburn in custody upon his June 28, 1996 release. The letter stated that Blackburn "did sign a waiver of extradition and is willing to voluntarily return to the State of Wisconsin in order to resolve the . . . warrant." The La Crosse County district attorney sent a "Request for Temporary Custody" to the Menard warden on January 9, 1996. On January 25, 1996, the warden sent the La Crosse County district attorney a request from Blackburn for final disposition of the charge. La Crosse County obtained custody of Blackburn on March 1, 1996, and his initial appearance was held on March 4, 1996.

On March 13, 1996, Blackburn filed a motion to dismiss, alleging that he was not brought to trial within the 180-day period as provided under the IAD.[1]

---

[1] Wisconsin has adopted the IAD in § 976.05, STATS. Relevant parts of the statute are:

(1) ARTICLE I. The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints. The party states also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures.

. . . .

(3) ARTICLE III. (a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, the prisoner shall be

Blackburn argued that his June 1995 letter gave the La Crosse County court and prosecutor notice of his desire for a speedy trial, and yet they failed to bring him to trial in Wisconsin within 180 days. The State moved to quash the motion, arguing that the June 1995 letter was insufficient to invoke the IAD. The circuit court granted the State's motion, finding that Blackburn's June 1995 motion did not comply with the procedural requirements of § 976.05(3), STATS.

Blackburn was tried on stipulated facts, found guilty, and sentenced to five years in prison. He appeals.

brought to trial within 180 days after the prisoner has caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his or her imprisonment and his or her request for a final disposition to be made of the indictment, information or complaint . . . . The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner and any decisions of the department relating to the prisoner.

(b) The written notice and request for final disposition referred to in par. (a) shall be given or sent by the prisoner to the department, or warden, or other official having custody of the prisoner, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

(c) The department, or warden, or other official having custody of the prisoner shall promptly inform the prisoner of the source and contents of any detainer lodged against the prisoner and shall also inform the prisoner of the prisoner's right to make a request for final disposition of the indictment, information or complaint on which the detainer is based.

## DISCUSSION

The resolution of the issues in this appeal requires the interpretation of § 976.05, STATS., a question of law that we review *de novo*. *See State v. Whittemore*, 166 Wis. 2d 127, 131–32, 479 N.W.2d 566, 568–69 (Ct. App. 1991). In interpreting a statute, our purpose is to ascertain and effectuate the intent of the legislature. *State v. Adams*, 207 Wis. 2d 566, 570, 558 N.W.2d 923, 925 (Ct. App. 1996).

Both Wisconsin and Illinois have adopted the IAD. The purpose of the IAD is "to encourage the expeditious and orderly disposition of [charges outstanding against a prisoner] and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." Section 976.05(1), STATS. To this end, the agreement establishes specific "cooperative procedures." *Id.* The procedures of this section are plain: when a detainer based on an untried complaint is lodged against a person imprisoned in a state that is a party to the IAD, that prisoner "shall be brought to trial within 180 days" from the time he or she "has caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his or her imprisonment and his or her request for a final disposition to be made of the . . . complaint." Section 976.05(3)(a). This request must be given to the official having custody over the prisoner, who will then forward it with a certificate to the prosecuting official and court "by registered or certified mail, return receipt requested." Section 976.05(3)(b). The official's certificate shall include the prisoner's term of commitment, time served, time remaining, good time earned, parole eligibility date, and any other "decisions of the depart-

ment relating to the prisoner." Section 976.05(3)(a). If these procedures are followed and the state does not bring the prisoner to trial within 180 days after receipt of the request, the complaint will be dismissed with prejudice. Section 976.05(5)(c).

Blackburn's motion was sent, without the requisite certificate, to the La Crosse County Circuit Court. In the motion, Blackburn provided notice of his place of imprisonment and made known his desire for final disposition of the complaint against him. However, this motion was not sent through the official having custody over Blackburn and was not accompanied by the certificate of that official. Additionally, the motion was not sent "by registered or certified mail, return receipt requested." Finally, Blackburn sent the motion before a detainer had actually been lodged against him. Because Blackburn failed to comply with the procedural requirements of § 976.05, STATS., his June 1995 motion did not begin the 180-day period under the IAD.

Blackburn argues that his June 1995 motion was sufficient to begin the 180-day period under the IAD because it gave notice to the La Crosse County Circuit Court and prosecutor of his desire for immediate disposition of the complaint. Blackburn contends that he should not be held to the technical requirements of § 976.05, STATS. In support of this contention, he cites § 976.05(9), which provides that "[t]his agreement shall be liberally construed so as to effectuate its purposes."

In *Cuyler v. Adams*, 449 U.S. 433, 449 (1981), the Court stated that "a primary purpose of the Agreement is to protect prisoners against whom detainers are outstanding." Federal case law interpreting the IAD has stated that the purposes of the IAD "are to encourage

379

the expeditious and orderly disposition of outstanding charges, to determine the proper status of detainers, and to establish cooperative procedures for the attainment of those goals." *See Schofs v. Warden, FCI, Lexington*, 509 F. Supp. 78, 82 (E.D. Ky. 1981). The IAD was created to facilitate the "expeditious and orderly disposition" of charges while protecting the interests and rights of the prisoner. Both purposes can coexist, as proven by the facts in this case.

When the Illinois prison official learned of the detainer lodged against Blackburn, she promptly informed him of his rights under the IAD and immediately began the process of requesting prompt disposition of the charge. She also informed Blackburn that his June 1995 motion was not in compliance with the IAD procedures and that he would have to follow those procedures to issue a valid request and begin the 180-day period. The prompt action by the official clearly complied with the purpose of protecting the prisoner's right to prompt disposition of the charges. If at that time Blackburn had complied with the explained procedures, a proper request and certificate would have been sent to the district attorney and the La Crosse County Circuit Court, alerting them that Blackburn had invoked the IAD and that they needed to bring him to trial within 180 days. Had Blackburn not expressly refused to follow these procedures, the purposes of the IAD would have been facilitated.

Blackburn urges us to follow decisions from other jurisdictions and construe § 976.05, STATS., liberally by adopting a "substantial compliance" doctrine in relation to the IAD procedures. *See United States v. Reed*, 910 F.2d 621, 626 (9th Cir. 1990); *Gibson v. Klevenhagen*, 777 F.2d 1056, 1058 (5th Cir. 1985); *Schofs*, 509 F. Supp. at 82. However, an examination of these cases

reveals that the "substantial compliance" doctrine is applied only where the prisoner's failure to meet the technical requirements of the IAD was due to inadequate guidance from prison officials.

In *Gibson*, Texas filed a detainer against the defendant in the Florida state prison holding him. *Gibson*, 777 F.2d at 1057. More than six months later, the defendant requested prompt disposition. Although the defendant's request did not meet the technical requirements of the IAD, the court held that it was sufficient to begin the 180-day period because it was "hard pressed to conceive of a way in which Gibson, acting *pro se,* could have effected any better compliance with the [IAD]." *Gibson*, 777 F.2d at 1058.

In *Schofs*, after a detainer had been lodged against the defendant in the prison holding him, the defendant "requested, and was denied, through no fault of his own, the forms necessary to initiate a request for final disposition pursuant to the IAD." *Schofs*, 509 F. Supp. at 82. Due to this lack of cooperation, the defendant's letter requesting disposition was held sufficient to begin the time period under the IAD. *Id.*

Finally, in *Reed*, the prosecuting body filed a detainer and speedy trial form against the defendant in the prison holding him. The prison official who notified the defendant of the retainer did not understand the IAD procedures and did not return the proper forms to the prosecuting body. *Reed*, 910 F.2d at 623. Because the defendant was misled by the prison official, the court held that the defendant should not be held to the strict procedural requirements of the IAD and that the prisoner invoked the IAD by filling out the forms presented by the prison official. *Id.* at 626.

These cases support the "substantial compliance" doctrine only where the defendant's failure to meet the

technical requirements of the IAD was due to "intentional or negligent sabotage by government officials." *See United States v. Smith*, 696 F. Supp. 1381, 1384–85 (D. Or. 1988). In all other cases, "a prisoner must strictly comply with the formal notice requirements of the Act." *See Reed*, 910 F.2d at 624.

■
The officials in this case acted in compliance with the IAD. The district attorney's office in La Crosse County filed the request for detainer on August 1, 1995. On August 11, 1995, an Illinois prison official learned of this detainer, explained to Blackburn the IAD procedures, and began the process of requesting prompt disposition. This action clearly fulfilled the requirements of § 976.05(3)(c), STATS. It was due only to Blackburn's refusal to follow these procedures that the request and certificate were not sent to the prosecuting authorities as soon as possible after the detainer was lodged against him. Because the government officials here complied with the procedural requirements of § 976.05, Blackburn will be held to the technical requirements of the statute.

Our conclusion is consistent with *State v. Adams*, 207 Wis. 2d 566, 558 N.W.2d 923 (Ct. App. 1996). In *Adams*, we construed § 971.11, STATS., which deals with the prompt disposition of intrastate detainers. We held the defendant to the technical requirements of the section. Our reasoning is specifically applicable to Blackburn:

> The service by certified mail provides a certain method for notifying the district attorney of his or her increased obligations. Imposing a duty on the warden or the superintendent to provide certain information in the request contributes to a speedier process. The interpretation urged by Adams is

> inconsistent with the legislative intent because his interpretation injects uncertainty and complication into the procedure.

*Adams*, 207 Wis. 2d at 574, 558 N.W.2d at 926.

In the same way, the receipt of a request for prompt disposition accompanied by the certificate of the official holding the prisoner, sent by registered or certified mail, return receipt requested, will immediately alert the recipients of the importance of the matter. The recipients will then be able to give the matter prompt and proper attention and bring the prisoner to trial on any criminal charges lodged against him or her. Where the recipients fail to act promptly in response to this clear alert, they frustrate the purpose of § 976.05, STATS. The penalty will be dismissal of the charges. In this way, order is maximized, confusion minimized, and the purposes of the statute effectuated.

We conclude that Blackburn's June 1995 motion was not a valid request for disposition and thus did not begin the 180-day period. Therefore, we reject Blackburn's argument and affirm.

*By the Court.*—Judgment affirmed.