STATE of Wisconsin,
Plaintiff-Respondent,†

v.

Benjamin D. TARRANT,
Defendant-Appellant.

Court of Appeals

*No. 2008AP1736–CR. Oral argument May 19, 2009.
—Decided July 15, 2009.*

2009 WI App 121

(Also reported in 772 N.W.2d 750.)

† Petition to Review denied 11/3/09.

On behalf of the defendant-appellant, the cause was submitted on the briefs of and oral argument by *Susan E. Alesia*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *William L. Gansner*, assistant attorney general, and *J.B. Van Hollen*, attorney general. There was oral argument by *William L. Gansner*.

Before Brown, C.J., Anderson, P.J., and Snyder, J.

¶ 1. ANDERSON, P.J. Benjamin D. Tarrant appeals from the circuit court's denial of his motion to dismiss criminal charges against him, premised on the State of

Wisconsin's failure to comply with the time limits of the Interstate Agreement on Detainers (IAD). We reverse, because the modification of a national arrest warrant, after Tarrant invoked the speedy trial provisions of the IAD, frustrated the principal purpose of the IAD, to protect prisoners by encouraging the prompt and final disposition of untried criminal charges.

¶ 2. The historical facts underlying Tarrant's claim are undisputed. On February 28, 2006, the State filed a four count felony complaint against Tarrant, who was imprisoned in the Ellsworth Correctional Facility in Kansas. Accompanying the complaint was an arrest warrant indicating that nationwide extradition would be used if Tarrant was arrested outside of Green Lake county. He responded on May 22, 2006, by filing an "Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations or Complaints" under the IAD.[1] Tarrant's request was accompanied by the warden's "Certificate of Inmate Status," giving details on Tarrant's term of imprisonment as required by the IAD. On June 8, 2006, at the request of the Green Lake district attorney, the circuit court modified the arrest warrant to remove the provision for nationwide extradition. Thereafter, Tarrant became aware that Green Lake county did not have any type of hold on him after June 9, 2006, that would affect his custody status in the state of Kansas.

¶ 3. Nothing further happened for one year until Dodge county extradited Tarrant from Kansas and he eventually made a personal appearance in Green Lake county on May 21, 2007. After that, Tarrant filed a

---

[1] The Interstate Agreement on Detainers is codified in WIS. STAT. § 976.05 (2005–06). All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

motion to dismiss, arguing that Green Lake county had violated the IAD when it failed to bring him to trial within 180 days of his filing the Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations or Complaints. The circuit court denied the motion, relying on the fact that the arrest warrant had been modified from a nationwide detainer to a Wisconsin-only detainer and concluded the time limits of the IAD no longer applied.

¶ 4. Failing to get the complaint dismissed, Tarrant entered a no contest plea to two felony counts and the other two counts were dismissed but read in. The circuit court accepted a joint sentencing recommendation for two terms of probation. Tarrant appeals.

¶ 5. On appeal, Tarrant argues that there is no language in the IAD that tolls the 180 day time limit if a detainer is modified or amended. He points out that the complaint and the Wisconsin-only arrest warrant remained active and he asserts that this fact supports his proposition that the time limit was not eliminated. Tarrant asks that we reverse the circuit court and dismiss all charges in the complaint with prejudice, as required for a violation of the IAD's time limit.

¶ 6. *Waiver.* Before addressing the merits, the State argues that Tarrant's no contest plea constitutes a waiver of all nonjurisdictional defects and defenses. *See State v. Multaler*, 2002 WI 35, ¶ 54, 252 Wis. 2d 54, 643 N.W.2d 437. The guilty plea waiver rule is a rule of judicial administration and not of power. *State v. Riekkoff*, 112 Wis. 2d 119, 124, 332 N.W.2d 744 (1983). Therefore, in our discretion we can decline to apply the rule "particularly if the issues are of state-wide importance or resolution will serve the interests of justice and there are no factual issues that need to be resolved."

73

*State v. Grayson*, 165 Wis. 2d 557, 561, 478 N.W.2d 390 (Ct. App. 1991), *aff'd*, 172 Wis. 2d 156, 493 N.W.2d 23 (1992). Whether the State can modify or amend a previously issued detainer to block the application of the IAD has not been addressed in this state and must be resolved. In addition, the issue was rigorously litigated in the circuit court and our resolution will not sandbag the court. Finally, the parties have fully briefed the issue and, as we noted, the historical facts are not in dispute. We therefore turn to the merits of the issue.

¶ 7. *Standard of Review.* The resolution of this appeal requires us to interpret the IAD, WIS. STAT. § 976.05, which is a question of law that we review without deference to the circuit court. *State v. Blackburn*, 214 Wis. 2d 372, 378, 571 N.W.2d 695 (Ct. App. 1997). Our goal in statutory interpretation is to determine and carry out the intent of the legislature. *Id.* The IAD is a remedial statute and we will construe it liberally in favor of a prisoner. *See* 2 MICHAEL B. MUSHLIN, RIGHTS OF PRISONERS § 10.21, at 384 (3d ed. 2002).

¶ 8. *Discussion.* The IAD is a congressionally approved interstate compact that establishes procedures for the transfer of a prisoner in one jurisdiction to the temporary custody of another.[2] *State v. Grzelak*, 215 Wis. 2d 577, 580, 573 N.W.2d 538 (Ct. App. 1997). In order to have consistency with the IAD interpretations of other federal and state courts, we must give considerable weight to federal and states courts' decisions construing the IAD. *State v. Whittemore*, 166 Wis. 2d

[2] Forty-eight states, the District of Columbia, the Virgin Islands, Puerto Rico and the United States have ratified the IAD. *Carchman v. Nash*, 473 U.S. 716, 719 (1985).

127, 133, 479 N.W.2d 566 (Ct. App. 1991). And, federal interpretations of the IAD trump state court interpretations because construction of interstate compacts, approved by congress under the Commerce Clause, presents a federal question. *See* MUSHLIN, § 10.21, at 384–85.

¶ 9. While lengthy, the IAD has two critical provisions, articles III and IV, WIS. STAT. § 976.05(3) and (4).[3] This appeal focuses on a portion of § 976.05(3):

[3] In *State v. Eesley*, 225 Wis. 2d 248, 254–58, 591 N.W.2d 846 (1999), the supreme court explained the operation of articles III and IV:

> Generally, Article III, [WIS. STAT.] § 976.05(3) . . . provides procedures whereby a prisoner against whom a detainer has been lodged, can demand a speedy disposition of the charges. When a detainer is filed against a prisoner, the warden must promptly inform the prisoner of such detainer and of his or her right to demand disposition. § 976.05(3)(c). If the prisoner makes such a request, the trial must commence within 180 days of the request. § 976.05(3)(a). If the receiving state fails to have a trial on the outstanding indictment, information or complaint within the prescribed time period and before the prisoner is transported back to the original place of imprisonment, the court is required to dismiss such charges with prejudice. § 976.05(3)(d).
>
> Article IV, WIS. STAT. § 976.05(4) provides the procedures whereby a prosecutor in the receiving state lodges a detainer against a prisoner in a sending state and secures the prisoner's presence for disposition of the charges. Once a prosecutor has filed a detainer against a prisoner in another jurisdiction, he or she may secure the prisoner's presence by presenting the sending state with a "written request for temporary custody." § 976.05(4)(a). Such a written request may be a writ of habeas corpus ad prosequendum. A trial must be commenced within 120 days after the arrival of the prisoner in the receiving state. § 976.05(4)(c). If a trial is not held on the charges within 120 days or prior to the prisoner being returned to the original place of imprisonment, the charges no longer have any effect, and the court must enter an order dismissing the charges with prejudice. § 976.05(4)(e). *See also* § 976.05(5)(c). (footnotes and case citations omitted.)

(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, the prisoner shall be brought to trial within 180 days after the prisoner has caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his or her imprisonment and his or her request for a final disposition to be made of the indictment, information or complaint, but for good cause shown in open court, the prisoner or the prisoner's counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility or date of release to extended supervision of the prisoner and any decisions of the department relating to the prisoner.

¶ 10. Professor Mushlin has identified three major purposes of the IAD: (1) "[T]o avoid the disruptions that occur in a prisoner's rehabilitation program occasioned by repeated transfers between different jurisdictions," (2) "[T]o avoid harassment of prisoners by the uncoordinated shuttling of prisoners back and forth between custodial and other states in which multiple related charges may be pending" and (3) "[T]o end the many abuses" of the previous detainer system. MUSHLIN, § 10.21, at 379–381.

¶ 11. The functions of the IAD have been elaborated upon by Professor Mushlin. They are

76

to protect sentenced prisoners against whom detainers are outstanding, to encourage expeditious and orderly disposition of outstanding charges and to insure that prisoners are afforded their right to a speedy trial, to afford a prisoner against whom a detainer has been lodged a procedure for testing its substantiality, to systematize the transfer of prisoners between different facilities and jurisdictions, to determine the proper status of detainers, and to establish cooperative procedures for attainment of those goals.

*Id.* at 381–82 (footnotes omitted).

¶ 12. The issue we address is rare. We have found only one reported federal decision and one reported state court decision, and they reach opposite results. But, as we explain, although opposite, the results are compatible. In *United States v. Donaldson*, 978 F.2d 381 (7th Cir. 1992), on November 22, 1988, a federal detainer was lodged against Donaldson with state authorities, who had him in custody, and he filed a demand for a prompt trial on December 1, 1988. *Id.* at 389. The government dismissed the underlying criminal complaint without prejudice and withdrew the detainer. *Id.* There was no evidence of whether state authorities were notified of the withdrawal of the detainer. *Id.* About one year later, the government filed a new criminal complaint and Donaldson was arrested. *Id.* He moved to dismiss the count that had been the subject of the detainer, arguing the government had been obligated to bring him to trial within 120 days of his demand for prompt disposition of the count. *Id.*

¶ 13. The Seventh Circuit held, "The withdrawal of the detainer removed Donaldson from the purview of the [IAD]. The [IAD] prevents detainers from remaining lodged with no action being taken on them for long periods." *Id.* at 390. The court pointed out that the

charge was resolved when the complaint was dismissed within 180 days of Donaldson's demand for a prompt trial. *Id.* After reviewing several cases, not directly on point but informative, *id.*, the Seventh Circuit concluded:

> [A] necessary prerequisite to the operation of the [IAD] is that a detainer is actually lodged by the charging jurisdiction with the jurisdiction holding the prisoner. Because the government withdrew its detainer against Donaldson and notified him of the withdrawal, the provisions of the [IAD] no longer applied to him.

*Id.* at 390–91.

¶ 14. We have found one state case that reaches the opposite result and distinguishes *Donaldson*. In *People v. Robertson*, 56 P.3d 121 (Colo. Ct. App. 2002), a Colorado district attorney lodged a detainer against Robertson while he was incarcerated in Oregon. *Id.* at 122. Robertson filed a motion for prompt disposition and the district attorney started extradition proceedings. *Id.* When essential witnesses were unavailable, the district attorney withdrew the detainer but did not dismiss the underlying criminal complaint. *Id.* More than one year later and one day before Robertson was to be released from the Oregon prison, the district attorney lodged a second detainer. *Id.* Robertson moved to dismiss the complaint, arguing that his right to a prompt disposition under the IAD had been violated and the trial court granted the motion. *Id.* The state appealed. *Id.*

¶ 15. In affirming the dismissal of the complaint, the Colorado Court of Appeals engaged in a brief English grammar lesson:

> Section 24-60-501, art. III(a) provides that once a detainer "has been lodged" and the underlying com-

78

plaint remains "pending," defendant has a right to demand disposition within 180 days. The present perfect tense, "has been lodged" indicates that an event occurred in the past prior to other events and implies that once the event has occurred—here the lodging of the detainer—certain consequences result. In this case, defendant obtained the right to demand disposition of the charges. The statute does not require that the detainer remain pending, or that it continue to be lodged, only that it "has been lodged." We conclude that the withdrawal of the detainer does not change the fact that a detainer "has been lodged."

*Robertson*, 56 P.3d at 123.

¶ 16. Colorado relied on *Donaldson*, arguing that the decision held the withdrawal of the detainer tolled the time limits of the IAD. *Robertson*, 56 P.3d at 123. The Colorado Court of Appeals easily distinguished *Donaldson*:

> Contrary to the People's contention, the court's conclusion in *Donaldson* did not rest only on the withdrawal of the detainer itself, but also on the dismissal of the underlying charges, which removed the basis for the defendant's speedy trial request. Regardless of the withdrawal of the detainer, defendant's speedy trial request was resolved because action had been taken on the underlying charges.

> Here, had the prosecution acted on the charges and the detainer, as in *Donaldson*, the charges no longer would have been pending, and defendant's right to require speedy disposition would have ceased.

*Robertson*, 56 P.3d at 123.

¶ 17. The court gave no consideration to the state's argument that "dismissing and then refiling charges is not substantively different, for purposes of

the IAD, from withdrawing a detainer and leaving pending charges in place." *Id.* at 124. The court reasoned:

> [T]o allow charges to remain pending despite a defendant's request for speedy disposition, as occurred here, contravenes the explicit purpose of the IAD to "encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints."

*Id.*

¶ 18. Wisconsin, as a signatory of the IAD, is required to protect prisoners by "encourag[ing] the expeditious and orderly disposition of such [outstanding] charges [against a prisoner] and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." *State v. Eesley*, 225 Wis. 2d 248, 261, 591 N.W.2d 846 (1999) (alterations in original) (citing Wis. Stat. § 976.05(1)). The lodging of a detainer can affect a prisoner's prison status, causing the prisoner adverse psychological impact. What the IAD is designed in part to do is protect prisoners from the adverse psychological impact of having outstanding charges pending for long periods of time. *See* Mushlin, § 10.20, at 376.[4] The IAD is meant to

---

[4] Under Wis. Admin. Code § DOC 302.07(11) (Dec. 2006), the existence of a detainer lodged against a prisoner may be considered in assigning a custody classification. *See Reddin v. Israel*, 561 F.2d 715, 717 (7th Cir. 1977) ("[I]t is a general policy in Wisconsin to prohibit transfer of a prisoner to minimum security if that prisoner has a detainer from another jurisdiction in his file.").

prevent or lessen a number of detrimental effects that can arise when a detainer is lodged.

> [T]he inmate is (1) deprived of an opportunity to obtain a sentence to run concurrently with the sentence being served at the time the detainer is filed; (2) classified as a maximum or close custody risk; (3) ineligible for initial assignments to less than maximum security prisons (i.e., honor farms or forestry camp work); (4) ineligible for trustee status; (5) not allowed to live in preferred living quarters such as dormitories; (6) ineligible for study-release programs or work-release programs; (7) ineligible to be transferred to preferred medium or minimum custody institutions within the correctional system, which includes the removal of any possibility of transfer to an institution more appropriate for youthful offenders; (8) not entitled to preferred prison jobs which carry higher wages and entitle [those holding] them to additional good time credits against their sentence[s]; (9) inhibited by the denial of possibility of parole or any commutation of his sentence; (10) caused anxiety and thus hindered in the overall rehabilitation process since he cannot take maximum advantage of his institutional opportunities.

*Id.*; *Cooper v. Lockhart*, 489 F.2d 308, 314 n.10 (8th Cir. 1973).

¶ 19. We believe that the approach of the Colorado Court of Appeals best fulfills the principal purpose of the IAD and adopting that approach insures uniformity in interpretation of the IAD. *See Estate of Matteson v. Matteson*, 2008 WI 48, ¶ 42, 309 Wis. 2d 311, 749 N.W.2d 557 ("The purpose of uniform laws is to establish both uniformity of statutory law and uniformity of case law construing the statutes, ensuring certainty and guidance to litigants who rely on the courts to interpret uniform statutes in a predictable and consistent manner."). Under the Colorado interpretation of

the IAD, the withdrawal of the detainer must be accompanied by the dismissal of the charges if the time limits of the IAD are to be avoided. This makes sense, because a prisoner who responds to the lodging of a detainer by filing an Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations or Complaints, accompanied by a warden's Certificate of Inmate Status, as provided for by WIS. STAT. § 976.05(3)(a), is demanding a prompt and final disposition of the underlying charges. A final disposition can only be achieved by a trial or dismissal of the charges. It is only after the charges "have gone away" that the prisoner is no longer exposed to the detrimental effects of pending criminal charges.

¶ 20. Applying the Colorado approach requires us to reverse Tarrant's conviction and dismiss the charges because he was not brought to trial within 180 days of his demand for a prompt and final disposition. It was not enough for the Green Lake county district attorney to modify the warrant to exclude the possibility of interstate extradition. Because the underlying criminal complaint was still pending, the basis for Tarrant's right to demand a speedy trial still existed.

¶ 21. Contrary to the State's argument, Tarrant does not have to prove he was prejudiced by not getting a prompt and final disposition in order to be entitled to relief under the IAD. *See State v. Bishop*, 139 P.3d 363, 366 (Wash. Ct. App. 2006) ("The mandatory language of article III supports *Carchman* [*v. Nash*, 473 U.S. 716 (1985)]'s recognition that a defendant does not have to establish prejudice for dismissal of charges under the IAD.").

██

¶ 22. *Conclusion.* Once a prisoner has properly requested a prompt and final disposition of pending

criminal charges, the only way the State can avoid its obligation to bring the prisoner to trial within 180 days of the request is to dismiss the untried complaint or information. Because Green Lake county only modified the arrest warrant to rule out nationwide extradition and did not withdraw the detainer and dismiss the criminal complaint, the source for Tarrant's request for a speedy trial was still in existence. Tarrant did not get the prompt and final disposition required by the IAD. Therefore, we reverse his conviction and remand to the circuit court with directions to dismiss the criminal complaint or Information with prejudice as required by WIS. STAT. § 976.05(3)(d). *See State v. Townsend*, 2006 WI App 177, ¶ 12, 295 Wis. 2d 844, 722 N.W.2d 753.

*By the Court.*—Judgment reversed and cause remanded with directions.