STATE of Wisconsin,
Plaintiff-Respondent,

v.

William M. ONHEIBER,
Defendant-Appellant.

Court of Appeals

*No. 2009AP460–CR. Submitted on briefs November 11, 2009.
—Decided November 25, 2009.*

2009 WI App 180

(Also reported in 777 N.W.2d 682.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William M. Onheiber*, pro se.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *William L. Gansner*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. HOOVER, P.J. William Onheiber, pro se, appeals an order denying his motion to dismiss a criminal complaint for violations of the Interstate Agreement on Detainers. Onheiber argues the complaint should have been dismissed with prejudice pursuant to WIS. STAT. § 976.05 because he was not brought to trial within 180 days of his request for final disposition of the pending charges.[1] We agree, reverse the order, and direct the circuit court to dismiss the complaint with prejudice. We also quash the arrest warrant/detainer, effective immediately.

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

## BACKGROUND

¶ 2.   In September 2005, Onheiber began serving a five-year term of confinement in federal custody following the revocation of his supervised release. Onheiber's supervision was revoked because he violated his supervision conditions by selling large quantities of marijuana to a confidential informant. Nine months later, on June 8, 2006, the Marathon County District Attorney's office filed a criminal complaint charging Onheiber for the marijuana deliveries. The circuit court issued a nationwide arrest warrant the following afternoon.

¶ 3.   Shortly thereafter, on June 14, 2006, Anna Anderson from the Federal Prison Camp in Duluth, Minnesota, where Onheiber was incarcerated contacted the Marathon County Sheriff's Department.[2] Sharon Roloff from the sheriff's department confirmed that a criminal complaint and arrest warrant for Onheiber had been issued. Following the phone call, Roloff sent a fax transmittal of the arrest warrant and attached complaint. The fax cover page stated:   "Copy of Onheiber warrant for your file. No detainer placed at this time. Please send 'notify' when appropriate."

¶ 4.   Approximately two weeks later, Anderson delivered to the sheriff's department a form "Detainer Action Letter." As shown below, the form contains five preprinted paragraphs with check-mark boxes, each of which clearly indicates whether a detainer has been lodged. However, Anderson modified the form, creating and check-marking a new paragraph. Following is a scanned copy of that document.

---

[2] June 9, 2006 was a Friday. June 14, 2006 was a Wednesday.

BP-S394.058   DETAINER ACTION LETTER   CDFRM
SEP 03
U.S. DEPARTMENT OF JUSTICE                                          FEDERAL BUREAU OF PRISONS

| To   Marathon County Sheriff's Department<br>ATTN: Warrants<br>500 Forest Street<br>Wausau WI 54403-5568 | Institution   Federal Prison Camp<br>P O Box 1400<br>Duluth MN 55814<br>218-722-8634 |
|---|---|
| | Date      06-27-2006 |

| Case/Dkt#<br>2005MA003225 | Inmate's Name<br>ONHEIBER, William M. | Fed Reg No.<br>13752-064 | DOB/SEX/RACE<br>1946-05-28/M/W |
|---|---|---|---|
| Aliases | | Other No. | |

The below checked paragraph relates to the above named inmate:

☐   This office is in receipt of the following report:_____ . Will you please investigate this report and advise what disposition, if any, has been made of the case. If subject is wanted by your department and you wish a detainer placed, it will be necessary for you to forward a certified copy of your warrant to us along with a cover letter stating your desire to have it lodged as a detainer. If you have no further interest in the subject, please forward a letter indicating so.

☐   A detainer has been filed against this subject in your favor charging _____ . Release is tentatively scheduled for _____ , however, we will notify you no later than 60 days prior to actual release. To check on an inmate's location, you may call our National Locator Center at: 202-307-3126 or check our BOP Inmate Locator Website at www.bop.gov.

☐   Enclosed is your detainer warrant. Your detainer against the above named has been removed in compliance with your request.

☐   Your detainer warrant has been removed on the basis of the attached _____ . Notify this office immediately if you do not concur with this action.

✱   Per our conversation and your fax of June 14, 2006, Inmate Onheiber has an outstanding warrant for pending charges in Marathon County for Deliver THC, Delivery of a Controlled Substance on or near Schools, Second and Subsequent Offense (2 counts) and Dealer Possession of Controlled Substance Without Tax Stamp (2 counts). You   request notification prior to his release. Our records have been noted. Tentative release date at this time is December 25, 2009, via Good Conduct Time Release.

☐   I am returning your _____ on the above named inmate who was committed to this institution on _ _____ to serve _____ for the offense of _____ . If you wish your _____ filed as a detainer, please return it to us with a  cover letter stating your desire to have it placed as a hold or indicate you have no further interest in the subject.

☐   Other:

Sincerely,                                    Ex. E

Anna M. Anderson
Supervisory Inmate Systems Specialist

Original - Addressee, Copy - Judgment & Commitment File; Copy - Inmate; Copy - Central File (Section I); Copy - Correctional Services Department
(This form may be replicated via WP)                                         (Replaces BP-394(58) dtd MAR 2003

*14*

712

¶ 5. Onheiber's attorney[3] averred that from June 2006 through November 2007 he attempted to resolve the pending charges with the district attorney's office, but was unsuccessful due to the office's workload and failure to communicate with him. In late November 2007, after Onheiber was informed the prison would not send his documents,[4] he mailed a "Written Notice of Place of Imprisonment and Request for Final Disposition of Complaint Pursuant to [WIS. STAT. § 976.05]." The notice was filed with the circuit court on November 27, 2007. On May 30, 2008, Onheiber moved to dismiss the complaint because he had not been brought to trial within 180 days.

¶ 6. Following a hearing, the circuit court denied Onheiber's motion in a written decision. The court concluded the 180–day timeline was never triggered because "a 'detainer' within the meaning of WIS. STAT. § 976.05 was never lodged . . . ." Onheiber appeals and, because he is due to be released from prison on December 25, 2009, we granted his motion to expedite our determination of his appeal.[5]

## DISCUSSION

¶ 7. In Wisconsin, the Interstate Agreement on Detainers is codified in WIS. STAT. § 976.05. Paragraph

[3] Onheiber was represented in the circuit court, but is now without counsel.

[4] The prison was required by the Interstate Agreement on Detainers to forward Onheiber's notice and request to the court and district attorney's office "by registered or certified mail, return receipt requested." WIS. STAT. § 976.05(3)(b).

[5] Onheiber further moved to stay the arrest warrant/detainer pending resolution of his appeal and further judicial review if necessary. That motion is mooted by this decision.

976.05(3)(a) provides that when a prisoner is imprisoned in one state[6] and there is a pending charge against the prisoner in another state

> on the basis of which a detainer has been lodged against the prisoner, the prisoner shall be brought to trial within 180 days after the prisoner has . . . delivered to the prosecuting officer and the appropriate court . . . notice of the place of his or her imprisonment and his or her request for a final disposition to be made of the . . . complaint . . . .

¶ 8. The dispute in this case centers on whether the nationwide arrest warrant constituted a "detainer" under the Interstate Agreement on Detainers. This presents a question of law that we determine independently of the circuit court. *See State v. Eesley*, 225 Wis. 2d 248, 254–55, 591 N.W.2d 846 (1999). Further, WIS. STAT. § 976.05 is a remedial statute that we construe liberally in favor of a prisoner. *State v. Tarrant*, 2009 WI App 121, ¶ 7, 321 Wis. 2d 69, 772 N.W.2d 750; *see also* § 976.05(9) (interstate agreement on detainers "shall be liberally construed so as to effectuate its purposes").

¶ 9. Although "detainer" is not defined by statute, the courts have "defined a detainer as a 'notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.' " *Eesley*, 225 Wis. 2d at 257–58 (quoting *United States v. Mauro*, 436 U.S. 340, 359 (1978)) (internal quotes omitted). This definition of a detainer is well-established in Wisconsin. *See State v. Miller*, 2003 WI App 74, ¶ 3 n.2, 261 Wis. 2d

---

[6] The federal government is considered a "state" for purposes of the Interstate Agreement on Detainers. *See* WIS. STAT. § 976.05(2)(c).

866, 661 N.W.2d 466; *State v. Nonahal*, 2001 WI App 39, ¶ 5, 241 Wis. 2d 397, 626 N.W.2d 1.

¶ 10.  Onheiber argues, and we agree, a detainer existed after Roloff verbally confirmed the existence of the criminal complaint and nationwide arrest warrant and then faxed to the prison the warrant and complaint with a request for notification prior to Onheiber's release. Indeed, the subsequent detainer action letter to the sheriff's department acknowledged the prison was aware of the charges, the arrest warrant, and the department's request for notification prior to Onheiber's release, and indicated the prison's "records have been noted." Additionally, the notice and request for disposition Onheiber provided to the circuit court and district attorney's office included a multi-page printout from the prison giving details of Onheiber's term of imprisonment.[7] The printout included a section titled "Current Notifies," which listed the Marathon County Sheriff's Department and noted under "Remarks": "Outstanding warrant for pending charges – marijuana."

¶ 11.  We fail to see how the foregoing could possibly not demonstrate "notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction." Indeed, we recently referred to a nationwide arrest warrant interchangeably as a detainer. *See Tarrant*, 772 N.W.2d 750, ¶ 3.

¶ 12.  Nonetheless, the State argues the nationwide arrest warrant should not be considered a detainer because the prison learned of it indirectly, and because

---

[7] WISCONSIN STAT. § 976.05(3) required that the notice include the sentence details.

the warrant is similar to a writ of habeas corpus ad prosequendum, which was determined in *Eesley* not to constitute a detainer.

¶ 13.   We reject the notion that how a prison first learns of a warrant or pending charges has any bearing on whether a detainer has been lodged.[8] What matters is whether a notification satisfying the definition of a detainer is filed. Here, the sheriff's department confirmed the existence of the nationwide arrest warrant and pending charges, and then faxed copies directly to the prison.

¶ 14.   We also reject the State's argument that a nationwide arrest warrant is similar in intent and effect to a writ of habeas corpus ad prosequendum (writ). In *Eesley*, 225 Wis. 2d at 253, the court was asked to determine whether the writ was a detainer for purposes of the Interstate Act on Detainers. The *Eesley* court

[8] The record does not indicate how the prison learned of Onheiber's arrest warrant. However, because the prison contacted the sheriff's department just days after the warrant was issued, it appears likely the warrant was entered into a nationwide clearinghouse, such as the FBI's National Crime Information Center (NCIC). If this is indeed the case, then the prison's notification was not so indirect or accidental as the State would have us believe. Although we need not decide the issue in light of the direct delivery of the warrant and complaint in this case, a strong argument can be made that mere entry of a nationwide arrest warrant into the NCIC or a similar national database is sufficient to constitute the lodging of a detainer when a prison learns of the warrant by accessing that database.

The NCIC is a computerized index of criminal justice information available to law enforcement and other criminal justice agencies that includes, among other things, a database of persons with outstanding arrest warrants. FBI National Crime Information Center website, http://www.fas.org/irp/agency/doj/fbi/is/ncic.htm, updated June 2, 2008.

716

concluded it was not, contrasting the purposes and effects of the writ and a detainer. The court first observed that the writ "is issued by a court when it is necessary to bring a person who is confined for some other offense before the issuing court . . . ." *Id.* at 258 (citation and quotation marks omitted). The court distinguished that definition from the definition of a detainer set forth herein, which focuses on providing notice that a person is wanted to face pending criminal charges. *Id.* at 257–58. The court further observed that because writs must be immediately executed, they are valid for only a short period of time. *Id.* at 259. Detainers, on the other hand, could be lodged against a prisoner for a very long time, often for the duration of the prisoner's sentence. *Id.* The nationwide arrest warrant in this case has been recorded in Onheiber's prison records for well over three years, unlike the temporary writ of habeas corpus ad prosequendum.

¶ 15. More importantly, *Eesley* focuses on the detrimental effects of detainers, which are absent in the case of the temporary writ. *Id.* at 259–62. The Interstate Agreement on Detainers was intended primarily to prevent those detrimental effects. *Id.* at 259; *see also Tarrant*, 772 N.W.2d 750, ¶¶ 10–11, 18–19. Thus, in *Eesley*, the court concluded the application of the Interstate Agreement on Detainers was not needed to achieve the expeditious disposition of writs. *Eesley*, 225 Wis. 2d at 261.

■■

¶ 16. We set forth in *Tarrant* a number of detrimental effects that the Interstate Agreement on Detainers was intended to prevent or lessen:

> The inmate is (1) deprived of an opportunity to obtain a sentence to run concurrently with the sentence being

served at the time the detainer is filed; (2) classified as a maximum or close custody risk; (3) ineligible for initial assignments to less than maximum security prisons (i.e., honor farms or forestry camp work); (4) ineligible for trustee status; (5) not allowed to live in preferred living quarters such as dormitories; (6) ineligible for study-release programs or work-release programs; (7) ineligible to be transferred to preferred medium or minimum custody institutions within the correctional system, which includes the removal of any possibility of transfer to an institution more appropriate for youthful offenders; (8) not entitled to preferred prison jobs which carry higher wages and entitle those holding them to additional good time credits against their sentences; (9) inhibited by the denial of possibility of parole or any commutation of his sentence; [and] (10) caused anxiety and thus hindered in the overall rehabilitation process since he cannot take maximum advantage of his institutional opportunities.

*Tarrant*, 772 N.W.2d 750, ¶ 18 (citing 2 MICHAEL B. MUSHLIN, RIGHTS OF PRISONERS § 10.20 at 376 (3d ed. 2002); *Cooper v. Lockhart*, 489 F.2d 308, 314 n.10 (8ᵗʰ Cir. 1973)); *see also Eesley*, 225 Wis. 2d at 260. Unfortunately, many of those effects have allegedly been suffered by Onheiber in this case.

¶ 17.  In his affidavit to the circuit court, Onheiber averred that because of the detainer filed at the prison he:  was denied a request for outside employment in the community service program; was denied a request for transfer to the federal prison camp in Oxford, Wisconsin, to be closer to his two children; lost his community custody, which is the lowest level of custody and would have permitted him to attend outside doctor appointments; was informed he might be transferred to more secure custody; lost his eligibility for furlough; was told he might lose eligibility for transfer to a

halfway house under the "Second Chance Bill"; and, as a result, had a diminished rehabilitative attitude. In his appellate brief, Onheiber further asserts, without objection from the State, that other similarly situated inmates are being given at least six-month halfway house allotments under the Second Chance Act of 2007.[9]

¶ 18. Additionally, in his motions to this court, Onheiber represented he would be subject to being held more securely, "in the hole," at the end of his prison term because of the detainer; he has arranged for employment following his release from prison, which would be inhibited by the detainer; and, upon release from prison, or transfer to a halfway house should he prevail in this appeal, he intends to seek immediate surgery at the VA hospital in Madison, Wisconsin, for a documented, painful medical condition.[10] Had the Interstate Agreement on Detainers been complied with in this case, any detrimental effects of the detainer on Onheiber would have been diminished or absent.

¶ 19. The State cannot file a detainer but then circumvent the requirements of the Interstate Agreement on Detainers by simply informing prison officials the State does not want the detainer to be called a detainer. Such a result would be farcical. Given that the facts of this case fit precisely within the established definition of a detainer, and given the State's knowledge

[9] Onheiber clarifies he is referring to 42 USC § 17541 (2008), titled the Federal Prisoner Reentry Initiative.

[10] Onheiber further asserts his repeated requests to the prison for medical attention were ignored until recently and, thus, it was likely too late to receive necessary treatment while in prison. Onheiber included a copy of his June 5, 2009 MRI report with one of his motions.

of the continuing and irreversible detrimental effects of the detainer on Onheiber, the State's position in this case is unfortunate. The district attorney and attorney general are:

> the representative[s] not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.

*Nelson v. State*, 59 Wis. 2d 474, 483, 208 N.W.2d 410 (1973) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)). Our supreme court further recognized: "The office of prosecutor is an agency of the executive branch of government which is charged with the duty to see that the laws are faithfully executed and enforced in order to maintain the rule of law." *Id.* (quoting *ABA Project on Standards for Criminal Justice, The Prosecution Function and The Defense Function*, § 1.1(a)). The State's handling of this case does not promote the rule of law.

*By the Court.*—Order reversed and cause remanded with directions; arrest warrant/detainer quashed.